EDWIN W. LUM ET AL *v.* MILDRED LASCH.

[46 South., 559.]

1. WILLS. *Contest. Testamentary capacity. Evidence.*

    It being clearly shown that testator had testamentary capacity when he executed his will, his mental capacity both before and after that event become immaterial.

2. SAME. *Devise to servant.*

    That a testator, having no relatives save a child of his divorced wife whose paternity he attributed to another, devised his property to one who had been his faitfhul servant for thirty years, is not indicative of an unsound mind.

FROM the chancery court of Claiborne county.

HON. J. S. HICKS, chancellor.

Lum and others, appellants, propounded the last will and testament of Phillip Lasch, deceased, for probate; Mildred Lasch, appellee, daughter of the testator, filed a caveat against

its probate, and an issue contesting the will was made up and tried in the court below, resulting in a decree in contestant's favor, from which the contestees appealed to the supreme court. The facts are stated in the opinion of the court.

*C. A. French,* for appellant.

On the first ground of the objection set out in the caveat there was not one word of evidence to support it, and therefore, that reason must fall to the ground, as being unsupported.

The third ground set out in the caveat must fail for the same reason, for the proof shows, that the will was properly executed, and there is now no contention that it was not.

The second ground set out in the caveat, seems to hinge the result in this case, for on that one the chancellor seemed to base his decision. The burden of showing undue influence exerted on the decedent at and prior to the making of the will was on the contestant. The question naturally arises, what is undue influence? It is such an influence exerted over a person, as to deprive him, or her, of the power to do as he, or she, wished to do. No matter how this influence is exerted, if it has that effect upon the person, upon whom it is intended to be exerted, then it is undue influence.

Therefore if the proof shows, and I contend that it does, that the will was properly executed, then the burden was on the contestant to show undue influence.

The question now arises, did the evidence in this case justify the court below in finding that undue influence was exerted on the testator. I contend that there was no such influence shown and therefore the court below erred in its judgment.

It was sought by the contestants to show that, the beneficiary in the will, Daphne Goza, was a paramour of the testator, and that when that was proven undue influence would be presumed.

This may be true, but before presumptions can be indulged in, the fact of the unlawful relations existing between the par-

ties must be proven, to the satisfaction of the court. We cannot draw a presumption from a presumption; presumptions can only be drawn from proven facts.

The only testimony in this case that even tended to show that Lasch and Daphne Goza had been living in unlawful cohabitation was that they lived in the same house, or, that the house in which Daphne Goza lived, joined that in which Lasch lived, and that they had lived that way for years..

On this question I respectfully refer the court to the following authorities: 29 Am. & Eng. Ency. of Law (2d ed.), 102, 104, 105, 109, 110, 115, 117, 119, 120, 121 and 130. On page 130 the case of *Dear* v. *Negley,* 41 Pa., 312, 80 Am. Dec., 620 is cited, but it was overruled in *Lewis Estate,* 210 Pa., 599; 4 Supplement to the Am. & Eng. Ency. of Law; *Higginbottham* v. *Higgenbottham,* 17 South., 516, *Scheiffield* v. *Higginbottham,* 28 South., 687.

"In a suit to set aside a will on the ground of undue influence, the admissions of a legatee concerning advancements made to him by the testatrix were inadmissible." *Vannest* v. *Murphy,* (Iowa) 112 N. W. 236. While there was no testimony tending to show such a state of facts in this case, as in the one cited above, yet the doctrine as laid down in that case tends to support the theory of the proponents in this case.

The fourth reason set out in the caveat is that the testator was not of testamentary capacity at the time he executed the will.

There can hardly be any question raised on that ground, for the testimony in support of the will and its execution is uncontradicted. The witnesses for the proponents are men of integrity and every essential element is proved and is uncontradicted. 22 Cyc., 1117; Notes 25 and 26, 22 Cyc., 1118, 1119, 1133, 1194, 1206, 1208; 28 Am. & Eng. Ency. of Law, 73, 74 and note, 76, 77, 78, 79; 30 Ib., 593, 594, 595, 596; 16 Cyc., 1130, 1131.

*E. S., J. T. & H. W. M. Drake,* for appellees.

The issue of *devisavit vel non* was, by agreement, tried by the chancellor, a jury being waived, and the chancellor having heard a considerable volume of oral evidence, found for the contestant, and denied the petition for probate.

The jury having been waived, the finding of the chancellor is entitled to the same consideration as the verdict of a jury, and the inquiry in this case on this appeal is whether this finding was unsupported by the evidence. If not unsupported by the evidence the finding of the chancellor must be affirmed. *Walker* v. *Walker,* 67 Miss., 529, 7 South., 491.

The two points relied upon were lack of mental capacity and undue influence exerted by the beneficiary upon the testator.

In support of the proposition that the testator lacked mental capacity, Dr. Burnett testified that he attended the testator on a number of occasions both before and after the execution of the will in question; that the testator was then in a state of great physical and mental weakness; that he was in a state of semi-stupor, from which it was difficult to arouse him; that he did not believe that his attention could be kept long enough for him to comprehend the contents of a document the length of the will in question.

Dr. Street testified that the testator was brought to Vicksburg some time in September; that he saw him frequently; that he was suffering with general paresis, and that as a result of this condition, he was in the opinion of the witness mentally unbalanced. That general paresis is a disease whose progress is slow, and that in his opinion the testator had been mentally unbalanced for several months, possibly six months or more prior to the date of witnesses examination of him in September. The will in question was dated July 20th.

Mrs. Jobe testified that she was a neighbor of the testator; and that toward the latter part of his illness she visited him every day for the purpose of bringing him delicacies; that he was usually in a flighty condition; that she was at his house on

the day the will was made, after its execution, and that his mind was wandering then.

James Boyd testified that he was at the testator's house on the day the will was made, and that testator was then under the delusion that one Lum, one of the appellants, had been to his house that morning and had left to go to witness's house, when as a matter of fact Lum had not, up to that hour been to testator's house on that day, the will being executed some hours later.

This was the evidence of the contestant on the question of mental capacity, and it was sufficient to support a finding of lack of mental capacity. It is true that the testimony of the two subscribing witnesses, and of the executor tended strongly to show that the testator was of sound mind at the time of the execution of the will, but much of the evidence was oral, the chancellor could note the manner of the witnesses testifying, and their bearing upon the stand, and he should not be reversed because the evidence, as it appears in type, would lead this court to a different conclusion.

Upon this question of undue influence the contestant was enabled to show the following:—

1st. That testator was at the time of the execution of the will in a state of great physical and mental weakness, and had been for a long time prior thereto. This is conceded.

2nd. That the rightful heir, the contestant, the daughter of testator, was ignored in the will, and a negro woman, one Daphne Goza made sole legatee and devisee.

3rd. That the proponent Daphne Goza had ample opportunity for exerting an influence over him, living in the same house with him, being his only nurse, and the only person with him for the greater part of the time, and for the greater part of his illness. This is not contradicted.

4th. That Daphne Goza was the mistress of testator and had been for many years.

5th. That she appeared to have him entirely under her con trol at and near to the time of the execution of the will.

6th. That she, the beneficiary, refused to permit certain of the witnesses to talk to testator.

The following facts were also shown: That Daphne Goza lived with the testator for many years; that on the day he secured his license to marry the contestant's mother, he conveyed to Daphne Goza's daughter a substantial part of his property. That thereafter, while still in sound health and mind, he expressed himself most affectionately towards his daughter, the appellee, on one occasion expressing a wish to leave her all of his property. That in the first stages of his illness (while Boyd was assisting in nursing him), he concluded to leave his property to Boyd and did make a will leaving the bulk of his property to Boyd's children, that Daphne Goza heard of this will, abstracted it, and had it read to her, and objected strongly to certain portions of it, and that Lasch the testator, at once destroyed this will, and on the next day made another eliminating the portions to which she objected, and that about a week later he made still another leaving all of his property to Daphne Goza, she in the meantime living in the house with him and having access to him at all times, and about that time Boyd's visits became unwelcome, a prompt result, two wills revoked and two more made, each one more favorable than the other to the proponent, in about one week's time.

7th. A most potent and conclusive circumstance was the fact that although Daphne Goza was in court during the trial and heard all of these various charges against her, yet she did not take the stand to explain the circumstances mentioned above, the greater part of which for that reason stand uncontradicted and unexplained.

Argued orally by *C. A. French,* for appellant.

CALHOON, J., delivered the opinion of the court.

The will of Phillip Lasch was proponded for probate. The

probate was contested, and the caveat is based on the following grounds: First, because it was inspired by prejudice and hate of the testator against his only child, the contestant herein, which prejudice and hate were inspired by Daphne Goza, the beneficiary herein; second, because the execution of the wlil was obtained by improper and undue influence exerted on him by the beneficiary therein; third, because the same was not properly executed; fourth, because the decedent was not of testamentary capacity when he executed the will; fifth, because the will is void for reasons of public policy; sixth, for many other reasons to be presented on the hearing.

The first and fourth clauses of the will provide for the payment of his debts and funeral expenses. The second clause is as follows: "I give, devise and bequeath my real and personal estate to Daphne Goza, who has been keeping house for me for over 30 years"—and then describing the real and personal estate. The testator, who had been many years separated from his wife by divorce, appears to have repudiated the child on the ground that he did not believe he was the father of it. All of the grounds on which the caveat is based seem to have been abandoned, as well they might be, except the second and fourth. Without going into a discussion of the testimony, we think it abundantly proved that the testator was of testamentary capacity when he executed the will. This is clearly established by competent, legal, disinterested testimony of gentlemen there present, who had every opportunity to know, and the mere fact that some weeks before and some weeks after the execution of the will he was not in proper mental condition to execute one does not, in our opinion, militate against the proof of his actual capacity at the very time he executed the will. All the circumstances of preparation just before it was executed indicate a perfectly sound mind, and the fact that he gave property to one who had been his faithful servant for thirty years is to us no sort of indication of unsound mind, particularly when we consider that he seems to have had no relation on earth, because

he did not believe that the child of his divorced wife owed its paternity to him.

After the most careful and painstaking examination of this record, we do not find any competent and satisfactory evidence of undue influence exerted upon him by the beneficiary in the will. At any rate, suffice it to say that we think the overwhelming preponderance of the evidence is opposed to any such conclusion. We are constrained, therefore, to reverse the ruling of the chancery court on the facts, and the decree is ordered to be entered here establishing the will as propounded as the true and proper last will and testament of Philip Lasch.

*Reversed, and decree here.*