LAMBERT *et al. v.* POWELL *et al.*

(In Banc.   Feb. 11, 1946.)

[24 So. (2d) 773.   No. 36039.]

A. A. Cohn, of Brookhaven, for appellants.

C. E. Gibson and E. B. Patterson, both of Monticello, and Jones & Stratton, of Brookhaven, for appellees.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

The parties to this suit are the heirs at law of H. A. Powell, deceased. The appellees, who are the son and grandson respectively of the deceased, filed the bill of complaint to cancel two deeds of conveyance made by the said H. A. Powell on January 24, 1942, and which were duly acknowledged before the Chancery Clerk on the same day, and duly recorded on February 4, 1942. By one the said deeds the grantor conveyed to his afflicted daughter, Miss Hazel Powell, 50 acres of his farm land; and, by the other deed, he conveyed to another daughter, Mrs. J. N. Lambert, the remaining 60 acres of the land. Each of the deeds of conveyance recited the consideration of $1 and other good and valuable considerations.

The proof discloses that the grantor, a widower, was residing on the land at the time of the execution of the deeds and that his daughter, Miss Hazel Powell, was also living there and keeping house for him. That the grantee in the other deed, Mrs. J. N. Lambert, was his only other daughter, and that the grantor lived in her home for the greater portion of the time, until his death in July, 1942, after executing the deed in her favor, and that he lived with the daughter of the said grantee for the remainder of said time. That the grantor had two sons, the appellee O. W. Powell, to whom he had previously given 20 acres of land, and the father of the appellee Lloyd Powell, who had died some time prior to the execution of the two deeds in question, and in connection with whose last illness and death the grantor had expended a considerable sum of money.

The record is silent as to the circumstances under which the two deeds in question were executed. It appears that the deed to his daughter, Mrs. J. N. Lambert, was mailed to her at Carriere, Mississippi, after its recordation. The proof fails to show whether the acknowledgments were taken by the Chancery Clerk at the home of the grantor or whether he went to the office of the clerk for that purpose. If he traveled from his home to the Chancery Clerk's office to acknowledge the deed it does not appear as to whether either of the grantees accompanied him; nor does it appear who was present, if anyone, other than the Chancery Clerk at the time the deeds were signed and acknowledged, nor is it shown by whom they were prepared.

The complainants undertook to establish the mental incapacity of the grantor to understand and appreciate the nature and import of a conveyance for the transfer of the title to land at the time the deeds were executed by the testimony of several lay witnesses who stated that in their opinion he did not possess such capacity, but in stating the facts on which their opinions were based, one of them stated that he went to the home of the grantor some time before Christmas when "he seemed awfully torn up—and asked me where he could find a cook; that his daughter got married." That the witness asked him if he meant his daughter Hazel, and that he said, "Yes, she married Lamar Walters," when as a matter of fact she was not married to anyone.

Another witness, a brother of the grantor, in stating the reason for his opinion said that the grantor "was in mighty bad health and it looked like his mind got bad, he couldn't remember anything, he was very nervous and would cry a lot"; also that "his mind rambled, he couldn't hold a conversation; he would start on one subject and be on another in a few minutes, He would break down and cry." And it seems that in these conversations the grantor was disturbed because he couldn't run the place, and it "was going to rack."

Another brother testified that he did not see him during the month of January, 1942, but saw him about the 14th or 15th of February, at which time the grantor called him by name when he arrived at his home, "and started crying, and he had a spell of crying." But this brother also testified that he had not seen the grantor for nearly a year at that time and the proof otherwise discloses that the grantor was old and sick and was having to be carried to the doctors frequently. As to whether his being emotional was due to a realization that he would likely not get well does not appear from the evidence.

Another witness based his conclusion that the grantor's mind was bad on the fact that about a month prior to the execution of these deeds the grantor told him about someone coming on the porch at the house one night and that he went to see what it was and that he saw someone jumping over the fence; and that on another occasion he saw the grantor up the road from his house and that he said he was trying to go home and was headed in the other direction.

A grandson of the grantor, Alton Powell, son of one of the complainants, testified that the grantor's voice was "trembly and shaky and he could never stick to one thing," and failed to recognize him on one occasion, thinking that he was one of his other grandsons at home on a furlough from the army.

Another witness based his conclusion on the alleged fact that about the 10th of January, 1942, when the witness was working on the road, the grantor came to where the road hands were in front of his home and stated that he wanted "somebody to carry me home; that he lived at Will Sumrall's and wanted somebody to carry him over there." This witness stated, when asked "who was with you when this happened," that there were "plenty of guys—the road hands." And it appears from his testimony that some of them were present at court, but none of them were introduced to corroborate his statement.

Twice as many witnesses were introduced on behalf of the defendants and the substance of their testimony is that while the grantor was old and sick he was up and about and mentally capable of transacting business, some of them having testified to his sale of some stumps to the Naval Stores Company, the sale to others of certain timber on his land, and the renting of a vacant house on his place for a monthly rental, and that he was able to tell where the lines were to the lands in question. The association of some of these witnesses with the grantor was more intimate than that on the part of the witnesses for the complainants near the time of the execution of these deeds.

But for the purposes of this decision we shall assume that the Chancellor was warranted in believing the testimony of the witnesses for the complainants in regard to the incidents upon whch they based their opinions. However, the decision of the case here must depend on the issue of whether or not, assuming the testimony for the complainants to be true as found by the Chancellor, the facts and circumstances are sufficient to show mental incapacity of the grantor at the time of the execution of these deeds.

In the first place, the disposition that he made of the land was quite a natural one. His afflicted daughter was dependent on him for support and, so far as the record discloses, he had no other means whereby she could be provided for. And immediately following the execution of the deeds they moved on a place then owned by the other grantee, Mrs. J. N. Lambert, and her husband, but where the daughter of Mrs. Lambert was living at the time, and shortly thereafter moved to Carriere, Mississippi, to live with the Lamberts, where he remained until his death in July of that year. Moreover, the proof discloses without dispute that the grantor had expressed the view that he had already done all that he could for his two sons.

If the grantor understood and fully appreciated that his execution of the deeds would have the effect of divesting him of the title to the lands and conveying the same in fee simple to the grantees, and if this was what he desired to do as a free and voluntary act, that is to say, if he understood the nature and import of the conveyances to transfer the ownership of the property to the grantees, then these deeds should not be cancelled and held for naught as prayed for herein.

The mental capacity of one executing an instrument to pass a title to land is to be tested as of the date of its execution, and temporary or intermittent insanity or mental incapacity does not raise a presumption that it continued to the date of such execution. Alexander on Wills, Vol. 1, p. 327; Schouler on Wills, Vol. 1, p. 134; Lum. v. Lasch, 93 Miss. 81, 46 So. 559; Moore et al. v. Parks et al., 122 Miss. 301, 84 So. 230; Scally et al. v. Wardlaw et al., 123 Miss. 857, 86 So. 625; and Fortenberry v. Herrington, 188 Miss. 735, 196 So. 232.

It is true that in each of the cases above cited the instrument involved was a will, but the rule as to the time for testing the mental capacity in the light of the evidence is the same in determining the validity of a deed as for a will. There is no reason for the application of any different rule in such cases, even if it could be said that a higher degree of mental capacity should be required for the valid execution of a deed than in case of a will.

As to the degree of mental capacity required in each case this Court has approved the rule as to a will to the effect that it is sufficient for the testator to understand and appreciate the nature of his act, the natural objects or persons of his bounty and their relations to him, and was capable of reasoning and thinking of how he desired to devise and bequeath his property. Moore et al. v. Parks et al., supra; Fortenberry v. Herrington, supra; and in case of a deed that the grantor shall have sufficient mental capacity to understand in a reasonable manner the nature of the particular transaction in which he was

engaged and its consequences and effects upon his rights and interest. Gillis et al. v. Smith et al., 114 Miss. 665, 75 So. 451, 454.

Also in that case the Court observed that "no one of the witnesses referred to was present at the time the deed was executed, and no living witness undertakes to state what the physical or mental condition of the grantor was on the day the deed was executed, except witness for the defendant whose testimony we now proceed to detail." The Court evidently intended by this observation to hold that the time for testing the mental capacity for a grantor to make a deed as the same as that for testing such capacity of a testator to make a will.

The most that can be said of the proof on behalf of the complainants in the instant case is that the grantor suffered intermittent abnormality on the particular occasions mentioned in the testimony, sometime prior to the execution of these deeds. There is neither allegation nor proof of undue influence and he was not shown to have been habitually insane or mentally incapacitated for any continuous period of time such as would raise a presumption that he was mentally incapacitated at the time of the execution of these deeds. If the proof had shown such fact, the burden of proof would have shifted to the defendants to show that he was sane enough to make the deeds at the time they were executed. Ricketts v. Jolliff, 62 Miss. 440; Parkinson v. Mills, 172 Miss. 784, 159 So. 651. But in the instant case the burden was on the complainants to prove that he was mentally incapacitated to make a deed on January 24, 1942, and there is no proof in the record of such want of mental capacity at any time during the month of January, 1942, unless the inapplicable presumption hereinbefore mentioned is to be indulged. In fact the proof affirmatively shows that the grantor was ordinarily capacitated to attend to such business matters, and that there were only isolated instances when he acted in an abnormal manner.

But it is urged on behalf of the appellees that since the Chancery Clerk was available to the defendants as a witness to prove the mental capacity of the grantor at the time he signed and acknowledged the deeds, and they failed to use him as a witness in that behalf, it should be presumed that his testimony on that issue would have been adverse to them. We deem it a sufficient answer to this contention to say that the mental capacity of the grantor is presumed when he signed and acknowledged these deeds before a public official under the facts of this case and that it never became the burden of the defendants to prove his mental capacity at that time.

We are, therefore, of the opinion that even though the facts and circumstances testified to on behalf of the complainants are assumed to be true, the proof is insufficient to justify the cancellation of the deeds in question; that the decree of the trial court should, therefore, be reversed and the bill of complaint dismissed.

Reversed and decree here for the appellants.