**Harvey W. SCHMIDT**

v.

**HUMBLE OIL & REFINING COMPANY.**
**No. 15198.**

United States Court of Appeals,
Fifth Circuit.

March 2, 1955.

Ben F. Cameron, Meridian, Miss., Cameron & Cameron, Meridian, Miss., of counsel, Bernard W. N. Chill, Jackson, Miss., O. Winston Cameron, Meridian, Miss., for appellant.

M. M. Roberts, Joe A. Thompson, Hattiesburg, Miss., for appellee.

Before HOLMES and BORAH, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

On August 2, 1950, appellant filed this suit to annul a lease upon a tract of highly productive oil lands in the State of Mississippi. He alleged that Mrs. Icie Lee Marks, a citizen of that state, had, on January 14, 1943, executed a lease covering the lands to one Lewis, who, in turn, transferred it to defendant, Humble Oil and Refining Company (herein called Humble), on May 7th of the same year.

The complainant further alleged that he acquired a lease upon the same property from Harold Marks, sole surviving heir of Mrs. Marks, on March 17, 1945; that on the 19th of the same month, he re-conveyed to Harold Marks, an undivided half interest in the same lease; that on March 14, 1947, the latter had executed a lease to Humble of the property; that on the preceding day, March 13, 1947, Harold Marks and wife had made "an assignment of half of the one-half undivided interest acquired from Harvey W. Schmidt * * * to Humble." This was then followed by the allegation that the oil and gas lease dated *February 5, 1943* from Icie Lee Marks to Lewis and subsequently assigned to Humble "* * * is null and void and of no effect because on the 5th day of February, 1943, Icy (sic) Lee Marks, lessor in said lease, was a person of unsound mind, to wit, a person non-compos mentis, incapable at law of executing a valid conveyance."

Complainant alleged further that the property covered by the said lease had been included with that of other owners in two separate units for drilling and production purposes as required by the state law of unitization, and that plaintiff stood ready to pay his proportionate share of the expenses incurred in such drilling and production, but that he was entitled to be decreed the owner of "one half of the non-operating" part of the seven-eighths, claimed by Humble, and to receive his share of the proceeds of production. He also demanded $500,000 as damages.

Humble moved to dismiss on the ground that all parties to the unitization in both units were indispensable parties to the suit, but that to bring them in would deprive the court of jurisdiction, since some of these holders were fellow citizens of complainant who alleged himself to be a citizen of Mississippi. Thereupon, complainant filed a pleading specifically restricting his demand to being placed in the position of Humble as lessee, and declaring his purpose not to disturb the rights of any other unit participant. He also amended his complaint to allege that he was a citizen of Louisiana.

The court overruled Humble's motion to dismiss and tried the case on its merits, building up a record of more than 600 pages, at the end of which an opinion was handed down in favor of defendant, Humble. Before the judgment could be signed complainant executed an "about face" and filed a motion to dismiss his own complaint on the same grounds as had been urged by Humble, i. e., absence of the identical "indispensable parties". He also moved for a new trial and the court denied both motions.

Appellant makes four assignments of error: (1) the overruling of his motion to dismiss for absence of indispensable parties; (2) the court's finding that Mrs. Marks was legally competent to execute the original lease; (3) the failure of the court to hold the lease void because Mrs. Marks "did not acknowledge it as required by Section 332 of the Mississippi Code of 1942, relating to conveyance of homesteads"; and (4) the refusal to find that the lease of January 14, 1943, "was terminated as a matter of law" by Humble's action in acquiring from Harold Marks the assignment of March 13, 1947, and the lease of March 14, 1947.

1. Complainant pleaded his case and the right to have it decided in his favor upon the proposition that he was demanding only that he be substituted for Humble in the lease with respect to all other persons in the units and pursued this theory throughout the trial which built up the large record over a period of many days. It was only after the court had handed down its opinion in favor of Humble that he, complainant, attempted to abandon that course and have the case dismissed on the very ground which had been first raised by appellee and which he had opposed. He could not be thus permitted to "blow hot and cold", but must be held bound by his choice of a basis upon which appellee was compelled to defend

the case. See Griffith, Mississippi Chancery Practice, Sec. 388; Mississippi Power & Light Co. v. Pitts, 181 Miss. 344, 179 So. 363. In this situation there was no need to bring in the other interests in the units. There is no contention of mistake or error on the part of plaintiff and had he prevailed, it is hardly necessary to say that he would not now be making any such contention.

2. This point presents the real issue in the case, that is, the mental competence of Mrs. Marks to execute the original lease. There was much evidence both ways by lay and expert witnesses on either side. It would accomplish little to undertake an extensive review of this evidence, especially since that has been done by the court below, who saw and heard the witnesses testify and was therefore in much better position to judge the weight and credibility of their statement that are we. It may be stated, however, that the case was a close one on its facts, and had the trial judge decided the other way, we would not be disposed to disturb his finding. The four persons who saw Mrs. Marks on the day before, as well as the day on which she executed the lease testified she understood fully what she was doing and executed it while in a normal condition. Defendant's representative left the lease with her on the 13th with the request that she examine it, stating he would be back to get it the next day. In the meantime she showed the lease to her sister and the latter's husband, discussed it with them and then signed it in their presence on the 14th, as promised. There was no overreaching, and the price paid was in accord with that which others were accepting in the locality at the time.

As usual, there was a difference of opinion on the part of the experts who testified on either side, including those who saw and attended Mrs. Marks in the hospital after she had been committed there on the 10th day of May, 1943. It is well settled that persons who suffer from mental disturbances, such as the evidence in this case tends to establish generally, have lucid intervals during which they are as competent to perform such acts as those who have had no trouble. Where this situation is shown contracts signed during those intervals are sustained. Lum v. Lasch, 93 Miss. 81, 46 So. 559; Moore v. Parks, 122 Miss. 301, 84 So. 230; Scally v. Wardlaw, 123 Miss. 857, 86 So. 625; Fortenberry v. Herrington, 188 Miss. 735, 196 So. 232; Lambert v. Powell, 199 Miss. 397, 24 So.2d 773, 168 A.L.R. 964; Cowart v. Cowart, 211 Miss. 459, 51 So.2d 775; Deanes v. Tomlinson, Miss., 54 So.2d 474.

We quote the following from the opinion of the court below, giving his appraisal of the evidence:

"The first contention must fail because the proof is insufficient to sustain the position of plaintiff, but on the contrary, the proof shows that at the time of the execution of the lease on Jany. 14th, 1943, Icie Lee Marks was sane and fully and completely in possession of her mental faculties. When she was approached for a lease upon her property she took the proposed lease and retained it over night and discussed it with her brother-in-law, D. O. Garner, before signing it. There is no contention or evidence that the market price prevailing in that vicinity at that time was not paid. This lease of January 14th, 1943, was acquired by Humble on the 7th of May, 1943.

"Icie Lee Marks was adjudicated a Non Compos Mentis on May 10th, 1943 and remained a patient in the insane hospital in Mississippi until her death on the 2nd of August, 1943. She died intestate, leaving as her only heirs her husband, C. S. Marks, and a minor son, Harold Marks. Her husband had deserted her many years prior to her death and had left Mississippi. She owned the place and continued to live on it till she went to the insane hospital, but rented it out to her

brother, with whom she frequently discussed her business affairs and who was well acquainted with her health condition, and she frequently visited him and his wife, her sister, as they lived close to each other in the community. Her health began to fail prior to May 10th, 1943 and it was thought she had pellagra, as she lost much weight and was not as active as she had been in earlier life. She was intelligent and had taught school in her earlier life. All through her adult life she had attended to her own business affairs, but for years had frequently consulted her sister and brother-in-law about business deals before entering into them. For some few months before she was adjudicated non compos mentis she was frail and at times despondent and somewhat eccentric, but did not excite the minds of those who were closest to her or most interested in her welfare to the extent that they thought she was losing her mind until just a few days before the adjudication."

3. There was no mention in the complaint of the failure to acknowledge the lease of January 14, 1943, and that issue was injected the first time when that document was sought to be introduced in evidence. The record shows that Mrs. Marks had been divorced from C. S. Marks, her first husband, many years before her death and had contracted a second marriage, which was later dissolved, presumably by death. She then remarried Marks but they remained together only a short while; and when this lease was signed, they had been separated for some nine years. Section 332 of the Code provides:

"Husband must join in conveyance of wife's homestead, unless adjudged insane.—A conveyance, mortgage, deed of trust or other incumbrance of the homestead where it is the property of the wife shall not be valid or binding unless signed and acknowledged by the owner and the husband *if he be living with his wife,* but if the husband is insane and the wife the owner of the homestead may file a petition in the chancery court setting out in the petition the insanity of the husband and that writ of inquiry of insanity has been sued out and lunacy adjudged, and the facts in the case, and chancery court in term time or in vacation shall hear the petition as in other cases and shall enter a decree authorizing and empowering the wife, the owner, to execute a conveyance, mortgage, deed of trust, or other incumbrance of the homestead without out the signature of the husband." (Emphasis supplied.)

It is conceded that the Courts of Mississippi have never construed this statute in a situation such as this and we agree with the court below that it did not apply here for the simple reason that the spouses were not living together and the undisputed facts disclose that there was nothing to support a belief that its basic purpose was defeated, that is, the certainty that her husband should not influence her to sign any document affecting her homestead against her wishes. On the other hand, the form of the lease and its authentication was in accord with another provision of the Mississippi law declaring the manner in which contracts affecting real estate shall be proven for the purposes of recordation, that is by the affidavit of one of the attesting witnesses. Sec. 858, Mississippi Code of 1942.

4. As to the fourth point, it is sufficient to say that Humble's taking of the lease from Harold Marks was nothing more than an act of precaution or in the nature of curative work for the benefit of its title. There was certainly no purpose to abandon the original lease of January 14, 1943.

For the reasons stated, the judgment appealed from is

Affirmed.