# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00607-COA

CHASITY ANDERSON                                                          APPELLANT

v.

DARNICE WIGGINS                                                           APPELLEE

DATE OF JUDGMENT:             11/29/2016
TRIAL JUDGE:                  HON. JOHN S. GRANT III
COURT FROM WHICH APPEALED:    RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       JAMES NELSON SCARFF II
ATTORNEYS FOR APPELLEE:       THOMAS J. LOWE JR.
                              JAMES BYRNES GRENFELL
NATURE OF THE CASE:           CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                  AFFIRMED - 05/14/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     After the death of her son, Darnice Wiggins sued her son's fiancée, Chasity Anderson,

for conversion. Wiggins then moved for summary judgment against Anderson. Anderson

moved for a continuance but never specifically responded to the summary judgment motion.

Three days before the hearing, Anderson's attorney suffered a medical emergency and

suspended his legal practice. The Rankin County Chancery Court denied the continuance,

went forward with the hearing, and granted summary judgment. After the denial of her post-

trial motions, Anderson appealed. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Wiggins's son, Jhonte Sanders, began dating Anderson in 2013. Sanders lived in

Chicago, Illinois, and Anderson lived in Florence, Mississippi. Sanders suffered from leukemia and soon moved to Mississippi to begin chemotherapy treatments at the University of Mississippi Medical Center. Several seizures severely compromised his mental and physical abilities. He died in February 2015.

¶3.     Before his death, he received a personal-injury settlement in excess of $350,000. While engaged to Anderson, he made several transfers to her from that settlement. The following transfers are the crux of the complaint for conversion:

1.      $100,072.73 transferred from Sanders's Navy Federal Credit Union account to Trustmark Bank on January 15, 2015;

2.      $105,000.00 in a transfer from Sanders's Trustmark Bank account to Anderson, dated January 22, 2015; and

3.      $100,000.00 transferred from Sanders's Navy Federal Credit Union account to Anderson on January 23, 2015.

¶4.     After his death, the Rankin County Chancery Court appointed his mother, Wiggins, administratrix of his estate. Wiggins sued Anderson for conversion in August 2015. Anderson was served with a copy of the summons and an unfiled complaint for conversion in September 2015. She was served with requests for admissions in October 2015. She failed to respond after thirty days, and the chancery court entered a default judgment against her in January 2016. The chancery court later granted her motion to set aside the default judgment but deemed that the unanswered requests for admissions be admitted.

¶5.     Wiggins then moved for summary judgment. A hearing on the motion was scheduled for November 29, 2016. One week before that hearing, Anderson moved for a continuance. She claimed that she was unable to depose the plaintiff's expert witness and that her attorney,

2

James Scarff, had several hearings that day and could not attend. Wiggins opposed the continuance because Scarff had already delayed the litigation several times with multiple continuance requests.

¶6. Two days before the hearing, Scarff became seriously ill and suspended his law practice for thirty days. He notified the chancery court of his poor health, and the court advised him to have another attorney appear at the hearing on his behalf and ask for a continuance. Scarff did not file a separate motion for a continuance. On the day of the hearing, two of his colleagues appeared before the court to explain that Scarff could not offer Anderson representation. Neither colleague entered an appearance for Anderson before or at the time of the hearing, but they later entered an appearance to file the post-trial motions. Anderson did not appear at the hearing, and there is no evidence that anyone ever alerted her to her attorney's absence.

¶7. The chancery court proceeded with the scheduled hearing. It denied the motion for a continuance and granted summary judgment. Anderson then moved for reconsideration and moved for a new trial. The court denied both motions. It is from this judgment that Anderson appeals. She asserts that: (1) the chancery court did not have subject-matter jurisdiction over the conversion claim; (2) the chancery court abused its discretion when it denied the motion for a continuance; (3) the chancery court erred when it granted summary judgment; and (4) the chancery court erred when it denied Anderson's post-trial motions. Finding no error, we affirm.

**DISCUSSION**

3

### I. Did the chancery court have subject-matter jurisdiction over the conversion claim?

¶8. Anderson argues that chancery court was not the proper court in which to file a claim for conversion. She asserts that the court lacked subject-matter jurisdiction over the claim. "The question of subject matter jurisdiction is an issue of law to which this Court must apply a de novo standard of review." *In re Adoption of J.D.S.*, 953 So. 2d 1133, 1136 (¶11) (Miss. Ct. App. 2007).

¶9. Our State's Constitution limits chancery-court jurisdiction:

> The chancery court shall have full jurisdiction in the following matters and cases, viz.:
>
> > (a) All matters in equity;
> > (b) Divorce and alimony;
> > (c) Matters testamentary and of administration;
> > (d) Minor's business;
> > (e) Cases of idiocy, lunacy, and persons of unsound mind;
> > (f) All cases of which the said court had jurisdiction under the laws in force when this Constitution is put in operation.

Miss. Const. art. 6, § 159.

¶10. The matter before us is a conversion claim. "Although property of which conversion is alleged is in the custody of a chancery court," *Georgia-Pac. Corp. v. Blakeney*, 353 So. 2d 769, 772 (Miss. 1978) (quoting 18 Am. Jur. 2d Conversion § 135 (1955)), an action for conversion alone is best heard in the circuit court. But if "there is one issue of exclusive equity cognizance, that issue can bring the entire case within subject matter jurisdiction of the chancery court and that court may proceed to adjudicate all legal issues as well." *Newton v. Brown*, 198 So. 3d 1284, 1288 (¶20) (Miss. Ct. App. 2016) (internal quotation marks

omitted).

¶11.    Wiggins's complaint only asserts a claim for conversion. She does not indicate any other tort or any other claim for the chancery court to consider. She asserts that the protection of the estate's assets entitles her to jurisdiction within the chancery court. She contends that Anderson cannot now claim a lack of subject-matter jurisdiction because the chancery court already rendered its decision. But jurisdictional challenges may be raised at any point during litigation, as well as on appeal. *Pierce v. Pierce*, 132 So. 3d 553, 560 (¶14) (Miss. 2014). Mississippi Rule of Civil Procedure Rule 12(h)(3) provides that "[w]henever it appears by suggestion that the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action or transfer the action to the court of proper jurisdiction." Additionally, our state constitution determines the ability of appellate courts to reverse a judgment of a chancery court when it lacks jurisdiction:

> No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction; but if the Supreme Court shall find error in the proceedings other than as to jurisdiction, and it shall be necessary to remand the case, the Supreme Court may remand it to that court which, in its opinion, can best determine the controversy.

Miss. Const. art 6, § 147.

¶12.    At the summary-judgment hearing, the chancery court discussed the jurisdictional concerns and found that it had jurisdiction over the claim. Specifically, it found that under *Wiggins v. Perry*, 989 So. 2d 419, 430 (¶28) (Miss. Ct. App. 2008), Anderson could not complain about subject-matter jurisdiction after the court ruled on the motion for summary

5

judgment.

¶13.    In that case, Wiggins did not raise the issue of subject-matter jurisdiction until after the chancery court granted summary judgment. Therefore, on appeal, our court was unable to reverse the case on the issue of subject-matter jurisdiction alone. *Id.* at 430-31 (¶28). We ultimately reversed the decision on other grounds and remanded the case with instructions that it be transferred to the proper court. *Id.* at 433 (¶47).

¶14.    In the present case, the chancery court held:

> Now, [the Mississippi Constitution] says a lot. And our case law says even more. In one case . . . it is stated that: "Because a party did not raise the issue of subject matter jurisdiction until after summary judgment had been granted in favor of the adverse party, the reviewing court could only reverse for lack of subject matter jurisdiction where there was also some other trial court error warranting reversal."

The chancery court found that subject-matter jurisdiction was never an issue before the motion for summary judgment. In her answer to the conversion complaint, Anderson asserted lack of subject-matter jurisdiction as an affirmative defense. But at no point thereafter did she actively pursue that defense. In fact, she never filed any motion based on those grounds. As in *Wiggins*, without some other error, precedent prevents us from reversing this case on the issue of subject-matter jurisdiction alone in this situation.[1]

---

[1] 3 Jeffrey Jackson, Mary Miller, and Donald Campbell, *Encyclopedia of Mississippi Law* § 19:188 (2d ed. 2018) ("Ordinarily, a court of appeals could reverse for lack of subject matter jurisdiction in the trial court even where the parties may not have raised the issue. Section 147 of the Mississippi Constitution provides that the supreme court is without power to reverse where the only error found is 'want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause . . . was of equity or common-law jurisdiction.'"); James W. Shelton, Miss. Chancery Prac. § 2:7 (2018) ("[T]he Constitution prohibits the Supreme Court from reversing a case where the only error is that the case was brought in chancery court when it should have been brought in circuit court, or vice versa.");

6

## II. Did the chancery court abuse its discretion when it denied the motion for continuance?

¶15. Anderson claims that the chancery court unfairly prejudiced her when the chancellor allowed Wiggins's motion for summary judgment to be heard after Anderson's counsel had notified the court that he was ill and unable to practice law. "The grant or denial of a continuance is within the discretion of the trial court." *Henderson v. Henderson*, 952 So. 2d 273, 277 (¶7) (Miss. Ct. App. 2006). "Prejudice must result from the denial in order to have that decision reversed." *Id.*

¶16. We find that the chancery court properly denied Anderson's continuance motion. Under our rules of civil procedure, "[a] written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five days before the time fixed for the hearing, unless a different period is fixed by these rules or by order of the court." M.R.C.P. 6(d). Parties have requested special considerations when sudden issues arise. In *Peden v. City of Gautier*, 870 So. 2d 1185, 1188 (¶10) (Miss. 2004), Peden moved for continuance on the morning of the hearing, citing poor health and that he was no longer represented by counsel. The court denied the motion. *Id.* at 1187 (¶5). On appeal, the Mississippi Supreme Court affirmed that denial because "Peden was in the courtroom and

---

*c.f. Waits v. Black Bayou Drainage Dist.*, 186 Miss. 270, 185 So. 577, 578 (1939) ("Section 147 of the Constitution has no application. It provides that no cause shall be reversed by the Supreme Court on the ground alone of a mistake in the trial court as to whether it is of law or equity jurisdiction. The trouble here is that neither the chancery court nor the circuit court had jurisdiction of this cause, as we will undertake to demonstrate. In the case of *Indianola Compress & Storage Co. v. Southern R.R. Co.*, 110 Miss. 602, 70 So. 703, [704 (Miss. 1916),] [s]ection 147 of the Constitution applied for it was not a question of jurisdiction, but a mistake in jurisdiction.").

actively participated in the hearing before the trial court, including questioning his own witness." *Id.* at 1188 (¶11).

¶17.     Unlike in *Peden*, Anderson did not participate in the hearing and had no one to participate on her behalf. Two attorneys appeared on the scheduled hearing date, but they only appeared as her counsel's "concerned friends." There is no evidence that anyone told Anderson of her attorney's status until after the hearing. Essentially, she was without counsel to represent her interests, and she was not there to represent herself.

¶18.     While we recognize that Anderson may have been denied a rightful hearing in front of the chancery court on her continuance motion, we also note that the motion was not for the same reasons that she argues on appeal. Anderson's motion cited an inability to depose an expert witness for the plaintiff. An additional continuance motion—specifically for Scarff's illness—was never filed. Although no one represented her interests regarding the expert witness deposition, we find no error in the denial of the motion for a continuance on those grounds. Therefore, we affirm.

### III.     Did the chancery court err when it granted summary judgment?

¶19.     Anderson avers that if she had been represented, then she could have adequately opposed the summary-judgment motion and shown a genuine dispute of material fact. "This Court applies a de novo standard of review to a grant of summary judgment by the lower court." *Hudson v. Courtesy Motors Inc.*, 794 So. 2d 999, 1002 (¶7) (Miss. 2001).

¶20.     Rule 56 of the Mississippi Rules of Civil Procedure governs summary-judgment motions. Summary judgment will be granted where—when viewing the evidence in the light

8

most favorable to the nonmoving party—the pleadings, depositions, answers to interrogatories, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c); *Lee v. Keller Williams Realty*, 247 So. 3d 293, 296 (¶6) (Miss. Ct. App. 2017). "A mere allegation by the nonmoving party that a dispute over whether a material fact exists will not defeat a movant's otherwise properly supported motion for summary judgment." *Scott Penn Inc. v. Mississippi Workers' Comp. Grp. Self-Insurer Guar. Ass'n*, 235 So. 3d 85, 91 (¶19) (Miss. 2017). "Additionally, a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Finally, under Rule 56(e), if the nonmoving party does not respond, summary judgment will be entered if appropriate.

¶21.    In support of her conversion claim, Wiggins argues that her son was a vulnerable adult who was unable to make decisions for himself. Mississippi Code Annotated section 11-7-165 (Rev. 2004) defines the actions set forth in Wiggins's complaint:

> In a civil action where it is proven that a person took property having a value of Two Hundred Fifty Dollars ($250.00) or more belonging to a vulnerable adult by conversion, embezzlement, extortion, theft or fraud without the owner's consent, or obtained the owner's consent by intimidation, deception, undue influence or by misusing a position of trust or a confidential relationship with the owner, then whether the action is to recover the property or damages in lieu thereof, or both, damages shall be recoverable up to three (3) times the amount of the monetary damages or value of the property embezzled, converted or otherwise stolen, in addition to any other damages.

Thus, at issue is whether Sanders qualifies as a vulnerable adult. Our Code defines a "vulnerable person" as:

9

[A] person, whether a minor or adult, whose ability to perform the normal activities of daily living or to provide for his or her own care or protection from abuse, neglect, exploitation or improper sexual contact is impaired due to a mental, emotional, physical or developmental disability or dysfunction, or brain damage or the infirmities of aging.

Miss. Code Ann. § 43-47-5(q) (Rev. 2004).

¶22. The record indicates that Wiggins produced a fully supported summary-judgment motion. And she included Dr. Clea C. Evans's affidavit in that motion. Dr. Evans stated that Sanders was "in the impaired range, with immediate memory, language, skill, and attention span problems." Dr. Evans thought that Sanders "did not have the cognitive ability, reasoning, or mental capacity to realize he was transferring this large sum of money or any sum of money to Chasity Anderson or the consequences of his actions . . . ."

¶23. Anderson could not show that there was a genuine dispute of material fact. Wiggins filed the motion on September 22, 2016. Anderson had at least 68 days to respond to the motion before the hearing date. But she did not. The unanswered requests for admissions were deemed admitted by the chancery court, and the chancery court may—and did—rely upon them.[2] And "[a] matter that is deemed admitted does not require further proof."

[2] According to the clerk's papers (pages 73-75) in the record on appeal, the seventeen requested admissions propounded to Anderson included: Sanders purchased a Toyota Camry for Anderson; Anderson traded the Toyota Camry for a Nissan Juke; "prior to January 15, 2015, [Anderson] had a zero net worth"; Sanders transferred $100,072.73 to Anderson on January 15, 2015; Sanders transferred $105,000.00 to Anderson on January 22, 2015; Sanders transferred $100,000.00 to Anderson on January 23, 2015; Sanders had been "under the care and supervision of a physician and was taking various medications" at various times; Anderson's mother picked Sanders up from the hospital on January 22, 2015, and drove him to Anderson's workplace where he signed papers to transfer money; Anderson used money from Sanders's account "to purchase Xbox games, clothes and other items" for $2,000.00 on January 22, 2015; Anderson used money from Sanders's account to purchase "a flat screen television for $1,000.00" in November 2014; Sanders received a personal-

10

*DeBlanc v. Stancil*, 814 So. 2d 796, 801 (¶25) (Miss. 2002). On appeal, she argues that if the chancery court granted her continuance, then she would have been able to show that genuine dispute. But she had ample time to do so before the hearing. Indeed, she was not left at the last minute without representation and no ability to respond to the motion. Instead, she had the opportunity to set forth a genuine issue of material fact, but she failed to timely do so.

¶24.  We therefore find that the chancery court properly granted summary judgment.

> **IV.    Did the chancery court err when it denied Anderson's post-trial motions?**

¶25.  After the entry of summary judgment, Anderson moved for reconsideration under Mississippi Rule of Civil Procedure 60(b)(6) and for a new trial under Mississippi Rule of Civil Procedure 60(b)(3). The court denied both motions. Anderson last argues that the chancery court erroneously denied those motions. "This Court will reverse the grant or denial of a M.R.C.P. 60(b) motion only upon a showing of abuse of discretion." *Tel. Man Inc. v. Hinds County*, 791 So. 2d 208, 210 (¶9) (Miss. 2001).

¶26.  Rule 60(b)(6) "is a 'catch-all' type provision that allows a judgment to be set aside for 'any other reason justifying relief from the judgment.'" *Id.* But "[r]elief under Rule 60(b)(6) is reserved for extraordinary and compelling circumstances . . . ." *Id.* (quoting *Briney v. United States Fid. & Guar. Co.*, 714 So. 2d 962, 966 (¶12) (Miss. 1998)).

¶27.  In her reconsideration motion, Anderson asserted the same issues that she now

---

injury settlement in excess of $350,000.00 in December 2014; and Anderson "never met or had a conversation with Dr. Clea Evans, the neuropsychiatrist who treated and cared for Jhonte Sanders, . . . ." All requested admissions were unanswered, and the chancery court deemed them admitted.

presents on appeal. As previously discussed, Anderson never pursued the jurisdiction issue and never responded to the summary-judgment motion, despite having ample time to do so. Accordingly, the chancery court did not abuse its discretion when it denied the motion for reconsideration.

¶28.   Rule 60(b)(3) allows for relief in instances where newly discovered evidence exists that was not found in time to move for a new trial under Rule 59(b). In her motion for a new trial, Anderson claimed that Dr. Stephanie Elkins's testimony was newly discovered evidence. We disagree.

¶29.   Dr. Elkins treated Sanders from 2011 until 2015. In April 2017, she submitted a letter stating that she had "never witnessed [Sanders] in a setting where [she] felt he could not make his own decisions and attend to his own affairs." Anderson's motion notes that her counsel spoke to Dr. Elkins several times before that letter. Anderson's counsel knew or should have known of Dr. Elkins's opinion regarding Sanders's condition and his ability to make decisions for himself.

¶30.   Anderson says that she did not produce the letter in time because of Dr. Elkins's travel schedule. But the record shows that defense counsel knew of Dr. Elkins's testimony and simply failed to procure it in a timely fashion. Therefore, we find that the chancery court did not abuse its discretion when it denied the motion for a new trial.

**CONCLUSION**

¶31.   We hold that: (1) the chancery court had subject-matter jurisdiction over the conversion claim; (2) the chancery court did not abuse its discretion when it denied the

12

motion for continuance; (3) the chancery court did not err when it granted summary judgment; and (4) the chancery court did not err when it denied Anderson's post-trial motions. We therefore affirm.

¶32. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ., CONCUR. TINDELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY J. WILSON, P.J., McDONALD, McCARTY AND C. WILSON, JJ.**

**TINDELL, J., DISSENTING:**

¶33. The majority states that "at issue is whether Sanders qualifies as a vulnerable adult." Maj. Op. at (¶21). With all due respect to the majority, that is not the issue. At issue is the alleged wrongful conversion of Sanders's assets by his fiancée, Anderson. While the affidavits, requests for admissions, and pleadings may very well have established that Sanders was a vulnerable adult, a question of fact still exists as to whether Anderson was in wrongful possession of Sanders's assets. Therefore, I must dissent.

¶34. As the Mississippi Supreme Court has explained:

> In a summary[-]judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised.

*Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990) (citations and internal quotation marks omitted). "[B]ecause [d]efendants do not carry any burden of production at trial, they also do not carry any burden of production at the summary-judgment

13

stage." *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 89 (¶13) (Miss. 2013).[3] So even though here Anderson's counsel failed to respond to the summary-judgment motion and to attend the hearing on the summary-judgment motion, it is still Wiggins, as the plaintiff and administrator of Sanders's estate, who bears the initial burden of producing evidence to establish that there is no genuine issue of material fact regarding conversion.

¶35.  "To establish a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Evans v. Miss. Dep't of Human Servs.*, 36 So. 3d 463, 477 (¶59) (Miss. Ct. App. 2010) (internal quotation mark omitted). "Common law conversion requires a wrongful possession with intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *Midwest Feeders Inc. v. Bank of Franklin*, 114 F. Supp. 3d 419, 426 (S.D. Miss. 2015).

¶36.  Wiggins argued before the chancellor that Anderson's admissions, coupled with the established facts and Dr. Evans's affidavit, clearly showed that the complaint for conversion should be granted.  In support of her summary-judgment motion, Wiggins offered the following exhibits:

> Exhibit A:   A copy of the complaint, which included copies of the following:  (1) a July 25, 2014 check for $12,295 to J&J Auto Brokers signed by Sanders from his account; (2) a January 12, 2015 bank check for $100,072.73 to Anderson; (3) a January 23, 2015 bank check for $100,000 to Anderson; and (4) a Trustmark

---

[3] The burden of proof may very well shift to Anderson at trial if a confidential relationship is established or the nature of the transactions is determined, but for purposes of seeking summary judgment on a claim for conversion, the burden of proof rests squarely with the plaintiff.

National Bank gift letter signed by Sanders acknowledging that Sanders was gifting $105,000 to Anderson for the purchase of property located at 112 Saint Charles Avenue, Florence, Mississippi 39073.

Exhibit B: A January 6, 2015 check for $500 to Remax Alliance signed by Anderson from her account.

Exhibit C: A MLS listing for a house for sale located at 112 Saint Charles Avenue, and the accompanying purchase contract executed on January 6, 2015, for the same house for a purchase price of $261,000.

Exhibit D: A warranty deed to Anderson dated February 5, 2015, for the property at 112 Saint Charles Avenue.

Exhibit E: A judgment deeming requests for admissions admitted.

Exhibit F: Wiggins's first set of requests for admissions propounded to Anderson.

Exhibit G: Dr. Evans's opinion and affidavit.

Exhibit H: Anderson's answer to the complaint and affirmative defenses.

¶37. Exhibits A through D attached to Wiggins's summary-judgment motion offered evidence of financial transactions made between or by Sanders and Anderson. Because Sanders himself authorized these transactions, Wiggins has the burden to establish that either Sanders lacked the competency to authorize the transactions to Anderson or that Anderson exercised undue influence over Sanders, a vulnerable adult, to make the transfers. The primary evidence to support these theories was Anderson's admissions and the opinion and affidavit of Dr. Evans.

¶38. In reviewing Anderson's admissions, I find that the only facts established are that Sanders made various transfers to Anderson and that Sanders was under a physician's care

15

and supervision and was taking various medications. There are no admissions that the funds were unlawfully converted, that a confidential relationship existed, that Anderson unduly influenced Sanders, or that Sanders lacked the capacity necessary to make the referenced transactions. Anderson's admissions, as a matter of law, do not establish an unlawful conversion of Sanders's assets to Anderson.

¶39. The only other evidence Wiggins relied upon in her summary-judgment motion was Dr. Evans's affidavit. Dr. Evans is the director of and the staff neuropsychologist at Methodist Rehabilitation Center (Methodist) in Jackson, Mississippi. Sanders was a patient at Methodist from November 14, 2014, until his discharge on November 28, 2014. In her affidavit, Evans states that, prior to his discharge, Sanders had an onset of confusion and a seizure disorder, and that, along with other neurological conditions, this caused "fluctuations in his thinking and memory skills." After his discharge from Methodist, Sanders continued to receive outpatient-rehabilitation services. According to Dr. Evans, Sanders "scored in the impaired range, with immediate memory, language[-]skills[,] and attention[-]span problems."

¶40. Based upon her review of Sanders's medical record and her own personal treatment of Sanders, Dr. Evans offered her opinions as to his mental state. In particular, Dr. Evans opined that from November 14, 2014, through January 22, 2015, Sanders did not possess the mental ability to manage his own financial affairs or to make legal or medical decisions for himself. As it pertained to the January 12, 2015 transaction, Dr. Evans relied upon a January 13, 2015 therapist note, which stated that Sanders was "having trouble remembering to take his medication," to conclude to a reasonable degree of medical probability that Sanders did

not have the cognitive ability or mental capacity to realize he was transferring such a large sum of money. As it pertained to the subsequent check and gift letter signed on January 22, 2015, Dr. Evans relied on a January 18, 2015 therapist note to reach the same conclusion as to those transactions.

¶41. Wiggins argues the chancellor properly granted summary judgment for the "simple fact that [Sanders] was a vulnerable person, lacking the apperceptive mass to understand what he was doing and the consequences thereof . . . ." To be clear, just because an individual is classified as a "vulnerable adult" does not mean that the individual is incompetent to transfer his or her assets to another. Indeed, our supreme court has acknowledged on multiple occasions that "the mere fact that someone is too ill to handle his affairs does not in and of itself render him mentally incompetent or void of testamentary capacity." *In re Estate of Laughter*, 23 So. 3d 1055, 1061 (¶22) (Miss. 2009) (citing *Lee v. Lee*, 337 So. 2d 713, 715 (Miss. 1976)). "[I]t is sufficient for the testator to understand and appreciate the nature of his act, [to appreciate] the natural objects or persons of his bounty and their relations to him, and [to be] capable of reasoning and thinking of how he desired to devise and bequeath his property." *Lambert v. Powell*, 199 Miss. 397, 404, 24 So. 2d 773, 775 (1946). In addition, even if a person is found to lack competency over a specified period, that person may have lucid moments or intervals when he or she possesses the necessary capacity to convey property. *Whitworth v. Kines*, 604 So. 2d 225, 229 (Miss. 1992). The pertinent time during which capacity is required is on the date the property was transferred. *See In re Estate of Mask*, 703 So. 2d 852, 858-59 (¶29) (Miss. 1997); *In re*

17

*Estate of Crutcher*, 911 So. 2d 961, 968 (¶21) (Miss. Ct. App. 2004). Here, Dr. Evans based her opinion on notes from Sanders's therapist, which were taken on different days from the dates of the transfers at issue. Further, nowhere does Dr. Evans state that Sanders was incompetent or insane. Equally important, there was no predicate for Dr. Evans's affidavit concerning Sanders's capacity.

¶42. Summary judgment should be granted with great caution after viewing the evidence most favorably toward the nonmovant. *Brown v. Credit Ctr.*, 444 So. 2d 358, 362-63 (Miss. 1983). In his two-page order granting summary judgment, the chancellor simply stated "that there [was] no genuine issue as to any material fact" and that Wiggins was "entitled to a judgment as a matter of law." But the chancellor never stated exactly how the established material facts in this case applied to Wiggins's claim of conversion. Even in her appellate brief, Wiggins acknowledges that "[i]t is impossible to know what passed between Sanders and Anderson that resulted in his transferring most of his settlement funds to her . . . ." But along with the nature of Sanders's mental state on the dates of the referenced transactions, that is the precise question that must be answered. Until such time, material questions of fact still exist that preclude summary judgment on Wiggins's claim of conversion. I therefore would reverse the chancellor's judgment and remand this case for further proceedings. Accordingly, I respectfully dissent from the majority's opinion.

**J. WILSON, P.J., McDONALD, McCARTY AND C. WILSON, JJ., JOIN THIS OPINION.**