BRADLEY *v.* HOWELL.

(Division B.  April 20, 1931.)

[133 So. 660.  No. 29312.]

For former opinion, see 133 So. 660.

McFarland & Holmes, of Aberdeen, for appellant.

Leftwich & Tubb and Young & Coleman, all of Aberdeen, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The contract in this case is so crudely and obscurely drawn, is so beset with ambiguities and uncertainties, in respect to the determinative issue here involved, that we cannot rest with confidence upon an interpretation in favor of either of the parties on that issue. The burden was upon appellant, as the complainant in the trial court, to establish his right to relief both on the facts and the law. He failed to convince the chancellor that the contract was such as to entitle him to relief, and, since the ambiguities and uncertainties of the contract are such that we cannot say with the requisite assurance that the chancellor was wrong, it is not permissible, under general rules, to reverse.

Nor can we see that the result would be changed by the evidence of the surrounding facts and circumstances, attending the execution of the alleged contract. So far as pertinent and dependable, these facts would give about as much comfort to one side as to the other. We do not believe there is substantial reason to anticipate that justice would be enlightened by a further pursuit of this litigation, and we shall therefore let the decree be affirmed.

Affirmed.

On Suggestion of Error.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

There are, in effect, two distinct cases involved in this appeal. Our original opinion (133 So. 660) dealt only with the first of them, and as to that case we adhere to that opinion. Appellant earnestly complains that, in our affirmance of the decree as to that case, we have disregarded the familiar doctrine that, when a contract is ambiguous or uncertain in its written terms, explanatory evidence will be received by way of all the pertinent surrounding facts of its execution and of its subsequent performance so as thereby to ascertain from all those extrinsic facts the probable intention of the parties. This ancient principle was not overlooked by us nor by the chancellor; but the rule adverted to is to be applied always cautiously by the courts, so that, when evidence of the character mentioned is received, it shall be such as to disclose clearly to the court that the evidence is usable and useful strictly to ascertain what was intended by the contract as actually made by the parties, not that said evidence may be availed of as an indirect means whereby the court may make a contract for the parties or insert therein some obligatory feature upon which the minds of the parties have never met. The province of courts in respect to contracts extends not a single step farther than the enforcement thereof as made by the parties, and courts must be careful that they go no farther. If the court should fail in enforcement, it would be only failure or omission; but, if upon any procedure or pretext the court should go farther and make a contract between parties which they themselves never made or agreed upon and thereupon enforce the same as made by the court, this would be oppression.

Thus it is that the extrinsic evidence to interpret what the parties have put in writing must be something upon which the court can safely rely; the character of that

evidence should be cogent and dependable—of a reasonably convincing nature as to the true meaning of the parties. The chancellor heard, at considerable length, the evidence touching the said surrounding facts and circumstances of the making of the contract and of its subsequent performance; but, so far from having any convincing effect upon him that the contention of appellant as to the construction of the contract was the one intended, it apparently had the opposite effect, so that he finally came to the conclusion, not only that the construction contended for by appellee was correct, but that it was plain from the contract itself, without the aid of the extrinsic circumstances, and thereupon he ruled that the evidence of the extrinsic facts should be excluded.

Upon our examination of the contract we were, and are, of the opinion that, in respect to the litigated issue, the contract is obscure, ambiguous, and uncertain, and that the chancellor was in error in his stated conclusion in that particular respect. It follows therefrom that the chancellor was also in error in the final exclusion of the said extrinsic evidence. But our duty here would not be performed, if, when technical error is shown by a record, we were thereupon to reverse without mature consideration whether the error is substantial, and substantially prejudicial to appellant. Consequently, as was our duty, we carefully examined all the aforesaid evidence of the surrounding facts and circumstances and of the subsequent performance and came to the conclusion, which we now repeat—keeping always in view the caution that such evidence is available only and no farther than for a definite interpretation and not for the making of a contract—that the said evidence was not of such cogent or determinative character as to throw any dependable light upon the meaning of the contract in respect to the litigated issue; whence it follows that the

exclusion, although technically erroneous, is not shown to have been substantially prejudicial to appellant.

When on appeal, especially from trials by the chancellor, complaint is made of the exclusion of evidence, it must be shown that the relevant probative force of the excluded evidence is such that, if admitted, it would be materially effective towards the production of a different result; otherwise there would be no real or practical use for the excluded evidence. As more particularly concerns the excluded evidence, we do not understand that appellant much contends in his suggestion of error against our view of the value of that evidence as it presently stands in this record; but rather that what he insists upon is that the decree be reversed and the cause remanded for a new trial, so that he may have the opportunity to introduce further and more persuasive testimony which he says "can be produced without any trouble if the case is reversed and the trial court instructed to hear such testimony."

But what that further and more persuasive testimony is, or will be, is not specifically shown by the record, nor precisely indicated therein, so that the court may be thereby officially informed whether the said proposed evidence would be pertinent and effective. It is not enough, however sincere it may be, to assert in a brief or in a suggestion of error that said additional evidence exists and can be produced. This question was reviewed at some length by the court in Miss. Cent. R. R. Co. v. Robinson, 106 Miss. 896, 64 So. 838, and it was there reaffirmed that, when a party seeks a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witnesses must be presented and there must be a specific statement of what the answers or testimony of these witnesses would be if allowed, so that the court may have, and in the record itself, something far more than generalities upon which to determine

whether the offered evidence would be material and of benefit to the merits of the case. See, also, Elliott Appellate Proc. secs. 743-746. In the absence of such a required, definite, official showing of other or further proof, the court must assume, when considering whether a case shall be reversed for technical error in excluding testimony, that any further proof offered would be only of the character of that already excluded; and since in this case we were bound to say that the proof already offered and placed in the record was not, in view of the caution aforementioned, of such determinative character as to throw any dependable light upon the meaning of the contract, in respect to the particular issue involved in the case, we were justified in concluding, as we did in our original opinion, that "we do not believe there is substantial reason to anticipate that justice would be enlightened by a further pursuit of this litigation."

We have said that this appeal involves in effect two distinct cases. Turning now to the second of them: About a year after all the pleadings had been closed in the first case, and after that case had for some time been ready for final hearing, the complainant filed in the said cause, without leave of the court, what was termed by complainant as his amended bill. This alleged amendment was of a wholly separate and distinct contract and transaction depending upon entirely different facts, and wholly disconnected from those involved in the original bill; it was not in any respect germane to the original bill, and, moreover, it involved a law action, pure and simple, not a matter in equity. It involved a contract by which appellee was to saw certain timber belonging to appellant, and was to deliver to appellant the lumber therefrom at market prices, and in respect to which appellant claims a balance due him on account of advances made to appellee and which had not been fully absorbed by lumber deliveries. It is true that there was an account of some length exhibited with the said so-called amended

bill, but this was merely of debits and credits. Even before the case of Barnard v. Sykes, 72 Miss. 297, 298, 302, 18 So. 450, and on down to the late case of Henry v. Donovan, 148 Miss. 278, 292, 114 So. 482, this court has consistently held and repeatedly declared that the mere fact that an account, although of some length in debits and credits, is involved in a case, does not give jurisdiction in equity. The requirement is that the account must be complicated to that extent that it could not be well unraveled by a jury, or it must be mutual, or require discovery, or there must be some other equitable feature involved. Exactly in point here on the facts is the case of Walley v. Dantzler Co., 114 Miss. 601, 75 So. 433, in which the court held that the chancery court had no jurisdiction of the account involving a logging contract, although it extended with numerous debits and credits over a period of eight years.

Clearly therefore, and for three reasons, the chancery court was correct in declining to entertain the so-called amended bill: First, it was filed in violation of the statute, section 393, Code 1930, which requires leave of the court after defendants have answered to the original bill; second, it was not germane to the original bill, but was of an entirely new, different, and distinctly separate case; and, third, it proposed a law litigation without a single feature of equitable cognizance. And all this was so clear that we did not deem it necessary to take any notice of it in our former opinion. It was not suggested to the trial court, when the demurrer to the so-called amended bill was sustained, that the said amendment should be treated as anything else than what it was named by the pleader, that is, an amended bill; or that any action should be taken on it other than that usual to an amendment which is disallowed and correctly so; and hence the court took the usual action and dismissed it.

Nor was it suggested by appellant in his original briefs here, nor even now in his suggestion of error has it been mentioned by appellant, that the said so-called amendment should be treated otherwise than an amended bill; but then and now appellant has labored in the futile effort to have the court take cognizance of it as an amended bill to be attached to and trailed along, in the chancery court, with and in the rear of another and a separate case. However, in spite of that insistent attitude of appellant, and in spite of the absence of any request or suggestion on the part of appellant so to do, we have concluded that it was the duty of the court under the Constitution, and in consequence it is out duty, to disregard the name which appellant has given his said so-called amended bill, and of the court's own motion to take notice of the substance of the situation, when, as already stated, the said proposed amendment is found to be simply a new and distinct separate law action, and that the same course should have been, and should now be, taken in respect thereto as had the said amended bill been filed and docketed in the chancery court as a separate and independent case.

Section 162, Constitution 1890, ordains that: "All causes that may be brought in the chancery court whereof the circuit court has exclusive jurisdiction shall be transferred to the circuit court." This section places upon the chancellor—and upon us—the positive constitutional duty, in the faithful observance and performance of which he is bound by his solemn oath of office, to transfer law cases to the circuit court; and the duty is imposed by the very terms of the Constitution, so that no request or suggestion by the parties is necessary, but the court must do so of its own motion. Therefore, as was held in Murphy v. Meridian, 103 Miss. 110, 60 So. 48, when the chancery court sustains a demurrer on the ground that the litigation is of law jurisdiction, the decree should not dismiss, but must transfer the case to

the circuit court. See, also, Robertson v. Dry Goods Co., 115 Miss. 210, 221, 76 So. 149. This course as to the so-called amended bill filed on the 19th day of June, 1929, should have been taken in this case; and in consequence we reverse the order made on the 28th day of July, 1930, which dismissed said amended bill, and remand the cause with directions that the court enter an order separately transferring the said last mentioned amended bill, and the separate case thereby stated, to the circuit court. In all other respects the decrees and orders of the chancery court shall stand affirmed.

So ordered.