Lang, et al. *v.* Jones.

No. 93688          June 13, 1955          80 So. 2d 783

*Robert E. Nason,* Ackerman, for appellants.

*Nate S. Williamson*, Meridian, for appellee.

GILLESPIE, J.

Richard K. Lang was about 85 years old on August 6, 1951 when he executed a deed to appellee, his seventeen-year old granddaughter. He was a widower and made his home with various children, but spent most of the time at the home of his daughter, the mother of appellee, and he was living at this daughter's home when the deed was made. A correction deed was made October 24, 1952. Richard K. Lang died in December, 1952. Suit was filed by appellee to correct a description in the deeds and confirm title to the tract which was misdescribed in both deeds. The heirs of Richard K. Lang filed a cross bill seeking to have the deeds cancelled because of fraud and lack of mental capacity of the grantor. The proof on the trial below, and the argument here, centered around the question whether Lang had mental capacity to understand the nature and effect of the deeds.

Numerous witnesses testified on the issue of mental capacity. The testimony on the part of appellants was

to the effect that from the death of Richard K. Lang's wife in 1949 until his death he was not of sound mind; that his physical and mental condition grew progressively worse until he died. Two physicians examined Richard K. Lang in September and October, 1952. Both testified that he was suffering from senile dementia, and both were of the opinion that he would not have possessed mental capacity to transact business on October 24, 1952, but admitted that some days might be better than others. Neither knew of the condition of Mr. Lang in 1952 when the first deed was executed. One of them was of the opinion that he should have been committed to an asylum.

The testimony on behalf of appellee was that while Richard K. Lang was old and feeble, his mind was good until just before his death; that at the times of the execution of the deeds he understood and knew the nature and effect of the transactions, and that he had expressed the desire to give his granddaughter all of his property and made arrangement to do so of his own volition. The chancellor was no doubt influenced by the fact that at the very times of the execution of the deeds in question the testimony of several witnesses was to the effect that Richard K. Lang was normal.

On the issue of mental capacity, the testimony was in conflict as to the entire period from the death of Mr. Lang's wife in 1949 until the date of the execution of the second deed. The appellee had the advantage of being able to offer proof of the mental capacity of the grantor at the very times the deeds were executed, and this proof was to the effect that the grantor was mentally capable of understanding the nature and effect of the transactions. In this kind of case, the test is whether the grantor had mental capacity to understand the nature and effect of the transaction at the time the instrument was executed, and testimony relating to that particular time is entitled to the most weight. Lum v. Lasch, 93 Miss. 81,

46 So. 559; Ward v. Ward, et al., 203 Miss. 32, 33 So. 2d 294; Exum, et al. v. Zachariah, 34 Miss. 533.

██ ■ The conflict in the testimony was for the determination of the chancellor, who resolved it in favor of appellee. Under the established rule that we will not reverse the chancellor on his findings of fact unless manifestly wrong, ██ ■ we must affirm the case.

██ ■ The proof is ample to show that the misdescription of the land which appeared in both deeds was a mutual mistake, and that the grantor intended to describe the land that appellee claims.

██ ■ The first deed contained the following provision: "I hereby reserve a life estate in and to the land above described, and at my death the land will be Edith Mae Lang." The deed was otherwise regular in form. It is contended that this provision was testamentary in character and that the instrument was inoperative as a deed. With this we do not agree. This Court has considered similar provisions in a number of cases. Cf. McMillan v. Gibson (Miss.), 76 So. 2d 239. It was the life estate that the grantor intended to reserve until his death. It is manifest that the intention of the grantor, which is the controlling consideration, was to withhold from the grantee the enjoyment of the lands until the former's death.

Argument is made that a confidential relationship existed between the appellee and her mother on the one hand, and Richard K. Lang on the other; that by reason thereof the deeds must be presumed to be fraudulent and voidable. This issue was not raised by the answer or cross-bill and the case was not tried below on that theory; nor does the proof sustain that contention. But if it could be said that there were sufficient facts from which the chancellor might have inferred the relationship to exist, it cannot be said that the chancellor was manifestly wrong in finding that such relationship did not exist.

Affirmed.

*McGehee, C. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.