In Re Estate of Joseph E. Reinecke, Deceased
Reinecke *v.* White, Admrx., et al.

No. 39793 November 21, 1955 83 So. 2d 438

*Donald W. Cumbest,* Pascagoula, for appellant.

*O. L. McLeod,* Pascagoula, for appellees.

HOLMES, J.

This appeal involves the determination of the rightful beneficiary, or beneficiaries, of the estate of Joseph E. Reinecke, deceased. Pending the appeal of this cause to this Court, the appellee, Robert Reinecke, administrator of the estate of Joseph E. Reinecke, deceased, has died and as to said appellee, the cause has been revived in the name of Mrs. Eugenia White, administratrix of the estate of Joseph E. Reinecke, deceased. The decedent, an adult resident of Jackson County, Mississippi, residing in Pascagoula, died on October 24, 1952. He left no personal estate and his only property consisted of real estate described as Lots 5, 6, 7 and 10, Subdivision of Lot 2, Sidoine Krebs Tract, Surveyor's Record Book 1, page 81, Jackson County, Mississippi. His only debts consisted of doctors, hospital, medical and funeral bills aggregating approximately $1,000. He left as his sole and only heirs at law his brothers and sisters, namely: Robert Reinecke, Pascagoula, Mississippi; Mrs. Eugenia White, Pascagoula, Mississippi; G. F. Reinecke, San Diego, California; and Mrs. D. P. White, La Mesa, California.

Following his death a search of his premises and effects revealed no last will and testament. Robert Reinecke, one of the brothers, applied for and obtained appointment as the administrator of the estate of the deceased. There being no cash or funds with which to pay the debts and expenses of administration of the estate, appropriate proceedings were had for the sale of the decedent's real property, at which sale the property was sold for $7,000. After the payment of debts from the proceeds of the sale, there remained for distribution to the rightful beneficiary or beneficiaries of the estate the sum of approximately $6,000.

Subsequent to the appointment and qualification of Robert Reinecke as administrator of the estate of the deceased, John Martin Reinecke, a nephew of the deceased residing in San Diego, California, filed a petition to dissolve the letters of administration issued to Robert Reinecke and to adjudge the petitioner, who is the appellant here, to be the sole heir and beneficiary of the estate upon the grounds that the said John Martin Reinecke and the deceased had entered into an agreement in the lifetime of the deceased whereby each would will to the other his entire estate.

On the hearing of the petition, both documentary evidence and oral evidence were introduced, and at the conclusion of the evidence, the appellee moved the court to exclude the evidence and to dismiss the petition upon the ground that the proof was insufficient to sustain the allegations of the petition. The chancellor found from the evidence that the decedent never made a will and never executed any document of a testamentary nature, and that no valid and binding agreement was entered into between the said John Martin Reinecke and the decedent during the latter's lifetime for the making of mutual wills, and he accordingly sustained the motion of the appellee to exclude the evidence and entered a decree dismissing the petition. From this decree, the appellant, who was the petitioner in the court below, prosecutes this appeal.

The appellant makes two contentions: (1) That the decree of the chancellor is contrary to the overwhelming weight of the evidence, and (2) that the trial court erred in not allowing the appellant, John Martin Reinecke, to testify in his own behalf.

The appellant relies upon certain letters exchanged between him and the deceased, supplemented by the oral testimony of O. K. Weisenberg, Mrs. Belle Griffin, and Robert Joseph Lopez, to support the appellant's contention that there was a valid agreement entered into be-

tween him and the deceased whereby he was to will all of his property to the deceased and the deceased was to will all of his property to the appellant. Three of these letters were introduced in evidence. One from Joseph E. Reinecke to John Martin Reinecke, dated November 17, 1951, read in its pertinent parts, as follows: ''Dear Nephew I received your 2 letters and I have enjoyed all that you said and all so your intentions to make me your Benafactor in case of Death. I shall do the same in case of Death now I would like for you to come and see me when you get through all of your Toures or when you take your vacation, some time in June 1952.''

Another letter was dated December 4, 1951, and was from John Martin Reinecke to Joseph E. Reinecke, and read in its pertinent parts, as follows: ''I am going to make you my beneficiary in case of death and would appreciate you doing the same.''

Another letter was dated August 13, 1952, and was from John Martin Reinecke to Joseph E. Reinecke, and read in its pertinent parts as follows: ''I own a business lot worth about $18,000 on one of the best business streets in San Diego. I have had it for 20 years, it is clear. Cannot get enough money ahead to build on it. Why don't you sell your property come out here, go in partners with me. We can put buildings on this lot that will bring us enough income so we can live the rest of our days. How does that sound to you?''

O. K. Weisenburg, called as a witness for the appellant, testified that he had represented the deceased in his lifetime for a number of years; that he talked to the deceased on August 26, 1952, about two months prior to his death; that on that date he noticed that the deceased was becoming feeble and he told him he was reaching that stage of life where he should make a will, and he asked the deceased if he had a will, and the deceased said he did not. This witness further testified that the deceased told him at that time that he wanted his nephew,

John Martin Reinecke, to come to Pascagoula and build some type of home on some of the property that he owned on Lake Avenue, and that if he did so and permitted him, the deceased, to live in it, he was going to deed to his nephew, the said John Martin Reinecke, his property, or will it to him. This witness further testified that a thorough search of the premises and effects of the deceased was made and that no last will and testament of the deceased was found, and that the deceased left no last will and testament.

Mrs. Belle Griffin, called as a witness for the appellant, testified that about two years before the death of the deceased he told her he was going to will his property to John Martin Reinecke; that the day before his death, the deceased told her he had made a will to his nephew, John Martin Reinecke. The witness said, however, that she did not and could not say what the terms and conditions of such will were supposed to be.

Robert Joseph Lopez, a minor sixteen years of age, testified that about two years before the deceased's death the deceased told him that he would leave his property to his nephew in California, John Martin Reinecke, and that on the day before the death of the deceased, the deceased told him that he wanted to make sure that his nephew would get his property.

■■ ■ Viewing the foregoing evidence as a whole, we are of the opinion that it is insufficient to show with the required degree of definiteness and certainty a valid and enforceable agreement between the parties to make mutual wills, involving the assumption of an obligation on the part of each of the respective parties not to revoke such wills. The chancellor so found, and we think his finding is amply justified under the evidence. The requisites of a valid and enforceable agreement to make mutual wills is well stated in 69 C.J., Wills, Section 2722, page 1300, as follows:

"An agreement to make mutual wills must, in order to be valid and enforceable, be fair and just, be definite

and certain, both in its terms and as to the subject matter, and be based on a sufficient consideration. Moreover, the agreement, in order to make the wills mutual, and to be enforceable, must be more than a mere agreement to make wills, or to make the wills which in fact are made: It must involve the assumption of an obligation to dispose of the property as therein provided, or not to revoke such wills . . . ██ █ Parol agreement to make mutual wills, it has been said, will be regarded with suspicion, and subjected to close scrutiny.''

██ █ Measured by these requisites, we are of the opinion that the chancellor was amply warranted in sustaining the motion of the appellee to exclude the evidence and in dimissing the petition.

In addition to what has been said, it is clear from the testimony of Mr. Weisenburg that the deceased never made a will and that he did not contemplate willing his property to the appellant except in the event the appellant came to Pascagoula and built a home on the Lake Avenue property and permitted the deceased to live in it, which event never materialized. This testimony clearly refuted the claimed unqualified agreement of the parties to make mutual wills. The chancellor was privileged to, and no doubt did, find this testimony to be true, and we are not warranted in saying that his finding was manifestly wrong, and hence it should not be disturbed.

██ █ The appellant further contends that the chancellor erred in refusing, on objection by the appellee, to permit the appellant to testify as a witness in his own behalf. There are several reasons why, in our opinion, this contention of the appellant is not maintainable. The record shows that the appellant was called as a witness in his own behalf and was permitted to state his name and address. He was then asked by counsel for the appellant whether or not he had filed the petition to set aside the letters of administration issued to Robert Reinecke. At this point, the appellee objected upon the

ground that the appellant was not a competent witness to establish his own claim against the estate of a deceased person which originated during the lifetime of such deceased person. The objection of the appellee was based upon Section 1690 of the Mississippi Code of 1942. The court sustained the objection, whereupon counsel for the appellant said: "For the time being, we will consent to that. I would like to call him back later." The witness was never recalled. Thus it appears that the appellant consented to the court's ruling and waived any objection thereto and is, therefore, not now in a position to complain thereof.

 Further, if it be assumed that the appellant proposed to testify in support of the allegations of his petition, then he was incompetent under the statute to so testify, since his testimony would have been to establish his own claim against the estate of a deceased person which originated during the lifetime of such deceased person. The appellant's entire claim was based upon an alleged agreement entered into between him and the deceased in the lifetime of the deceased to make mutual wills. Whatever rights he had, therefore, originated by virtue of the alleged agreement entered into in the lifetime of the deceased, and hence his incompetency under Section 1690 of the Mississippi Code of 1942 to so testify is apparent. There is a further reason, however, why this contention of the appellant is not well founded. The record fails to disclose what the testimony of this witness would have been. Thus the correctness or incorrectness of the court's ruling is not before us. We so held in the case of Boggan v. Scruggs, 200 Miss. 747, 29 So. 2d 86, wherein the Court said:

"The appellant offered a witness who was not permitted to testify seemingly on the ground that she was disqualified under Section 1690, Code 1942. Whether or not this ruling of court is correct, is not before us, for the reason that the record does not disclose what the evidence of this witness would have been."

Accordingly, and in the light of the views hereinbefore expressed, we are of the opinion that the decree of the court below should be and it is affirmed.

Affirmed.

*McGehee, C.J.,* and *Hall, Lee,* and *Kyle, JJ.,* concur.