CONERLY *v.* LEWIS, et al.

No. 41268 February 1, 1960 117 So. 2d 460

*W. H. Watkins, Jr.,* Tylertown; *B. D. Statham,* Magnolia, for appellant.

*O. W. Phillips,* Magnolia, for appellees.

KYLE, J.

This case is before us on appeal by P. T. Conerly, from a decree of the Chancery Court of Walthall County dismissing with prejudice the bill of complaint filed by Wilmer Lewis and others, complainants in the court below, against Alfred Lewis and others as defendants, seeking the cancellation of six purported deeds of conveyance executed by Aaron Lewis, Sr., now deceased, bearing date January 30, 1945, and conveying to the grantees therein named certain lands owned by the grantor, and asking for a partition of said lands in kind or for a sale of said lands for a division of proceeds among the heirs of the grantor according to their respective interests.

The record shows that the said Aaron Lewis, Sr., died intestate on December 22, 1945; and that he left surviving him, as his only heirs eight children and lineal descendants of three other children who had predeceased him. The children who were living at the time of his death were Alfred Lewis, Aaron Lewis, Jr., Willie Lewis, Wilmer Lewis, Mary Bell Lewis Raiford, Vinetta Lewis Holmes, Rebecca Lewis McGowan, and Elgenia Lewis. The three children, who had predeceased him leaving bodily issue, were Daniel Lewis, the grantee in one of the above mentioned deeds, who died intestate after the date of the execution of said deed, leaving as his only heirs seven children; and Jacob Lewis, who died intestate prior to the death of his father, leaving as his only heir one child, Ernestine Lewis Jones; and Rufus Lewis, who died intestate prior to the death of his father, leaving as his heirs eight children.

The bill of complaint in this cause was filed by Wilmer Lewis, Mary Bell Lewis Raiford, Elgenia Lewis, Alberta Lewis Williams, and Cephus Lewis and Rutha

Lee Lewis, minors, by Mary Bell Lewis Raiford, next friend, on April 21, 1956. Alfred Lewis, Aaron Lewis, Jr., Willie Lewis, Vinetta Lewis Holmes, Rebecca Lewis McGowan, Ernestine Lewis Jones, and all of the remaining heirs of Daniel Lewis and Rufus Lewis, who would have had an interest in the lands if the deeds were set aside and cancelled, were made parties defendant.

In their bill of complaint the complianants alleged and the record shows that Aaron Lewis, Sr., during his lifetime, owned 350 acres of land in Walthall County, which consisted of an 80-acre tract of land described as the SW¼ of the NW¼ and the SE¼ of the NW¼ of Section 15, in Township 2, North, Range 11 East, on which the family dwelling house was located, and 270 acres of land in Section 8, in said township and range; and that on January 30, 1945, Aaron Lewis, Sr., executed six deeds conveying said lands in separate parcels to certain of his children and grandchildren, as follows: In two of said deeds the grantor conveyed to his son, Alfred Lewis, the 40-acre tract of land described as the Southwest Quarter of the Northwest Quarter of Section 15, and 20 acres of land situated in said Section 8; and to his son, Willie Lewis, the 40-acre tract described as the Southeast Quarter of the Northwest Quarter of said Section 15, and 20 acres of land in Section 8. In the other deeds the grantor conveyed to each of his sons, Daniel Lewis and Aaron Lewis, Jr., 40 acres of land in Section 8, and to the children of his deceased son, Rufus Lewis, as tenants in common, 40 acres of land in Section 8; and to his four daughters, Mary Bell Lewis Raiford, Vinetta Lewis Holmes, Rebecca Lewis McGowan, and Elgenia Lewis, as tenants in common, the remaining 110 acres of land in Section 8. In each of said deeds the grantor reserved unto himself a life estate in the lands conveyed.

In their bill of complaint the complainants further alleged that the said Aaron Lewis, Sr., was mentally

incompetent and not capable of executing a valid deed at the time the above mentioned deeds were executed, and that said deeds should be cancelled as clouds upon the title of the heirs of the grantor, who were the owners of said lands in fee simple. The complainants further alleged that only small portions of said lands were cultivatable; that there were only meager improvements on said lands; and that said lands were not susceptible of a fair and equitable division or partition in kind, and that a sale of said lands would better promote the interest of all parties. The complainants therefore prayed that upon the final hearing of the cause a decree be entered cancelling the above mentioned deeds as clouds on the title of the heirs of the said Aaron Lewis, Sr., and ordering that said lands be partitioned among the several cotenants according to their respective interests, or that said lands be sold for a division of the proceeds among the several cotenants.

Alfred Lewis and several other defendants filed an answer to said bill of complaint, and in their answer denied that the complainants and the defendants were the owners of the 350 acres of land in fee simple. The defendants in their answer denied that Aaron Lewis was mentally incompetent or incapable of executing valid deeds of conveyance at the time said deeds were executed; and the defendants denied that the complainants and the remaining heirs of Aaron Lewis, Sr., were the owners of any interest in the lands conveyed to said defendants in said deeds dated January 30, 1945; and the defendants denied that the complainants were entitled to a partition of said lands as prayed for in their bill of complaint. The defendants in their answer alleged specifically, as additional matters of defense, that the said Alfred Lewis and Daniel Lewis, immediately after the death of Aaron Lewis, Sr., on December 22, 1945, entered into possession of the lands conveyed to them and had remained in possession thereof contin-

uously since that time, claiming said lands as their own; that said possession had been open, notorious, hostile, adverse, continuous and exclusive possession of said lands for a period of more than ten years, during which time the defendants had cultivated said lands, sold timber therefrom, and had exercised all other acts of ownership; and that the complainants were barred from asserting, or attempting to assert any right, title, interest or claim in the lands described in the deeds of conveyance to the said Alfred Lewis and the said Daniel Lewis.

After the filing of the defendants' answer and prior to the date of the hearing of the case on its merits, the above named Wilmer Lewis, Mary Bell Lewis Raiford, Elgenia Lewis, Vinetta Lewis Holmes, Aaron Lewis, Jr., Willie Lewis and Ernestine Lewis Jones executed quitclaim deeds conveying their interests in said lands to P. T. Conerly; and P. T. Conerly filed a petition to intervene in said cause as a party complainant. A decree was therefore entered on November 21, 1957, making the said P. T. Conerly a party complainant.

The cause was heard during the November 1957 term of the court upon the bill of complaint and amendments thereto, the answer of the defendants and amendments thereto and other pleadings, and oral and documentary proof. Six witnesses testified for the complainants, and eight witnesses testified for the defendants. At the conclusion of the hearing the chancellor found that, at the time of the execution of the above mentioned deeds, Aaron Lewis, Sr., was mentally competent and fully capable of knowing and understanding the nature of his acts; that he was not mentally incapacitated in any manner when said deeds were executed; and that said deeds were legal, valid and binding upon all of the parties; and the chancellor entered a decree dismissing with prejudice the bill of complaint. From that decree the complainant, P. T. Conerly, has prosecuted this appeal.

The appellant assigns three errors as grounds for reversal of the decree of the lower court:

I. That the evidence is conclusive that Aaron Lewis, Sr., was not mentally competent to execute deeds of conveyance on January 30, 1945, and that the decree declaring the same to be valid is against the overwhelming weight of the evidence.

2. That the court erred in permitting Dr. J. J. Pittman to decline to testify; and

3. That the court erred in refusing to admit as evidence in the case a record of the testimony of Dr. Pittman taken during the trial of the case of Hunt et al. v. Lewis et al., Cause No. 2803, as shown on the Chancery Court Docket of Walthall County, which was affirmed by this Court on appeal, as shown in 219 Miss. 812, 70 So. 2d 13.

 █ It is not necessary that we review in detail the testimony of the 14 witnesses who testified in the case. We think there was ample evidence in the record to support the finding of the chancellor that Aaron Lewis, Sr., the grantor in the several deeds, at the time he executed the same, was mentally competent to act for himself and was fully capable of knowing and understanding the nature of the transactions, and that the deeds were valid and binding upon all of the parties.

It is true that the testimony of the complainants' witnesses shows that Aaron Lewis, Sr., was more than 90 years of age at the time the deeds were executed; that he had suffered during a period of several years from arteriosclerosis, cardiac insufficiency, swelling in the feet and legs, and other ailments which frequently manifest themselves in persons of such advanced age; that he was feeble and unable to get in and out of the house without help and was at times confined to his bed; and that at times he paid little attention to those who tried to engage him in conversation. But there is ample evidence in the record to support the chancellor's finding that he was not mentally incompetent at the time the

deeds were executed. The testimony of the defendants' witnesses which the chancellor accepted was the tstimony of disinterested witnesses who were present at the time Aaron gave instructions for the preparation of the deeds and at the time the deeds were actually executed and delivered to the clerk for recording; and that testimony, in our opinion, was sufficient to show that he was mentally capable of transacting business and that he understood fully the nature and effect of the transactions in which he was engaged.

A. D. Brumfield, who assisted Aaron in having the deeds prepared and witnessed the execution of the deeds, testified that he had known Aaron Lewis all of his life; that sometime during the latter part of January, 1945, Aaron sent word to him by Alfred and Daniel that he wanted to see him at his home. Brumfield went to Aaron's home and took Mr. Kelley Ginn with him. When they arrived at Aaron's home, Aaron told Brumfield that he wanted to divide his lands among his children, and he wanted Brumfield to see that it was fixed and put on paper like he wanted it. Aaron then gave Brumfield from memory a description of the 350 acres of land which he owned. Brumfield and Ginn went back to the courthouse, checked the deed records and made a plat of the land. Brumfield and Ginn then returned to Aaron's home with the plat, and Aaron called off to them the description of the land which he wanted each of his children to have, and proper notations were made on the plat. Aaron started with the boys, and when he got through with that he asked Brumfield to look at the plat and see if he had 110 acres that he had not given anybody. Brumfield told him that he did have 110 acres left. Aaron then said that he wanted the 110 acres to go to the four girls, and he wanted a joint deed made to them covering it. Aaron then directed Brumfield to have reserved to him in each deed a life estate in the land conveyed. Brumfield stated that he came back to town to

have the deeds prepared. Mr. Seth Ginn, the chancery clerk, prepared the deeds according to Aaron's instructions, reserving for Aaron in each deed a life estate; and Brumfield, Mr. Seth Ginn and Kelley Ginn then went back to Aaron's home, where the deeds were executed. Mr. Seth Ginn read the deeds aloud to Aaron one by one, and when he had finished reading Aaron said to him: "It is all right—I am ready to sign." Aaron said he wanted to sign by mark; he could not sign his name. Aaron then signed each of the deeds by mark, and Brumfield and Mr. Seth Ginn signed their names as witnesses. Brumfield stated that Aaron's mind was in the same condition at the time he signed the deeds that it had always been. Some of the children were there and protested the way he divided the land, and Aaron said, " I can't help that, I am fixing it like I want it, and I hope you will be satisfied, if not I can't help it." Aaron then asked Mr. Seth Ginn what he owed him, and Mr. Ginn told him that he did not owe him anything, but he would have to pay for the recording. Brumfield stated that Willie and Alfred came to town the next morning and paid for the recording.

Brumfield stated that shortly after the execution of the deeds Aaron came to town to see about the payment of his taxes, and he told Brumfield at that time that he had the land leased for oil and was getting the lease money; and he requested Brumfield, if he were living at the time of his death, to send certified copies of the deeds to the oil people, so that each party would get his part of the lease money. Brumfield again stated that Aaron's mind was as good as it had ever been, although he could not get about as good as he once did. Brumfield stated that Aaron told him that he wanted Alfred and Will to have the two 40-acre tracts which constituted the home place, because they were the two boys who had helped him save the 350 acres during the depression when he borrowed money from the Federal Land Bank.

Brumfield stated that Dr. Pittman saw Aaron a few days before his death. Aaron was in a coma at that time. Brumfield did not know whether Dr. Pittman had ever gone out there to see him before or not.

Brumfield's testimony relating to the preparation of the deeds and the execution of the deeds by the grantor was corroborated and confirmed by the testimony of Kelley Ginn, a member of the Board of Supervisors of Walthall County. Kelley Ginn testified that he had known Aaron a long time; that he and Brumfield went out to Aaron's home together at the time Aaron gave instructions for the preparation of the deeds; that Aaron told them what land he wanted each grantee to have; and that Seth Ginn, the chancery clerk, prepared the deeds. Kelley Ginn stated that he did not detect anything wrong with Aaron's mind. Aaron was not bedridden at that time, but he was old and feeble. He could not read or write, but he knew how much land he owned and exactly where it was. The record shows that Seth Ginn, the chancery clerk, who prepared the deeds and witnessed the execution of the deeds and certified the acknowledgment, was dead at the time of his trial.

J. D. Lewis testified that he went to Aaron's home on December 1, 1944, to take an acknowledgment of a mineral deed or some other paper as a notary public. He did not detect anything wrong with Aaron's mind. Aaron was feeble physically, but "mentally I would say just as normal as ever." W. H. Brumfield testified that he bought a cow from Aaron on February 10, 1945. Aaron was sick but his mind seemed to be as good at that time as it had ever been. Ira L. Magee testified that he visited Aaron several times during the year 1945; that he talked to Aaron, and the condition of Aaron's mind was all right, seemed like it always was. Aaron was feeble, but he knew Magee the last time he was there.

On the issue of mental capacity the proof in this case is not unlike the proof disclosed by the record in Lang

et al. v. Jones, 224 Miss. 649, 80 So. 2d 783, wherein the Court said:

"The appellee had the advantage of being able to offer proof of the mental capacity of the grantor at the very times the deeds were executed, and this proof was to the effect that the grantor was mentally capable of understanding the nature and effect of the transactions. In this kind of case, the test is whether the grantor had mental capacity to understand the nature and effect of the transaction at the time the instrument was executed, and testimony relating to that particular time is entitled to the most weight. Lum v. Lasch, 93 Miss. 81, 46 So. 559; Ward v. Ward, et al., 203 Miss. 32, 33 So. 2d 294; Exum, et al. v. Zachariah, 34 Miss. 533. The conflict in the testimony was for the determination of the chancellor, who resolved it in favor of appellee. Under the established rule that we will not reverse the chancellor on his findings of fact unless manifestly wrong, we must affirm the case."

In Lambert et al. v. Powell, et al., 199 Miss. 397, 24 So. 2d 773, this Court held that deeds should not be cancelled for mental incapacity of the grantor if the grantor understood and fully appreciated that his execution of the deeds would have the effect of divesting him of the title to the lands and conveying the same in fee simple to the grantees, and if that was what he desired to do as a free and voluntary act. The Court in that case also held that the mental capacity of one executing an instrument passing title to land is to be tested as of the date of its execution; and in discussing the mental capacity required, the Court said:

"As to the degree of mental capacity required in each case this Court has approved the rule as to a will to the effect that it is sufficient for the testator to understand and appreciate the nature of his act, the natural objects or persons of his bounty and their relations to him, and was capable of reason-

ing and thinking of how he desired to devise and bequeath his property. Moore et al. v. Parks et al., supra; Fortenberry v. Herrington, supra; and in case of a deed that the grantor shall have sufficient mental capacity to understand in a reasonable manner the nature of the particular transaction in which he was engaged and its consequences and effects upon his rights and interest. Gillis et al. v. Smith et al., 114 Miss. 665, 75 So. 451, 454.''

There is no evidence in the record in the case we now have before us which would justify a finding that the execution of the deeds sought to be cancelled was procured as the result of undue influence, imposition or fraud; and in our opinion the findings of the chancellor that Aaron Lewis, Sr., was mentally competent and fully capable of knowing and understanding the nature of his acts at the time the deeds were executed must be affirmed.

It is argued, however, by the appellant's attorneys that the court erred in permitting Dr. J. J. Pittman, who was called to testify as a witness for the complainants, to decline to testify, on the ground that the facts and circumstances concerning which he might be interrogated were facts and circumstances made known to him confidentially in the course of his treatment of Aaron as a patient, in a professional capacity as a physician, and were privileged, under Section 1697, Code of 1942, Recompiled. But we think that the complainants' claim of reversible error based upon the court's ruling on that point cannot be sustained.

The record shows that, when Dr. Pittman was called to testify as a witness, he immediately asked to be excused from testifying on the ground that the knowledge acquired by him concerning the physical and mental condition of Aaron Lewis, Sr., was privileged under the statute, and that he should not be required to disclose the same as a witness in the case. The court sustained

the doctor's objection to being required to testify. But, notwithstanding the court's original ruling, the complainants' attorney was later permitted to question the doctor to a limited extent about Aaron's physical and mental condition extending over a period of several years. In answer to the questions asked, the doctor stated that he had treated Aaron as far back as 1938 for arteriosclerosis and cardiac insufficiency, and that one in that condition would not have the mental or physical faculties that he had before he developed such ailment. The doctor was then asked whether one in that condition remembers. His answer was, "At times", but "he grows progressively worse as he lives on through life." One in that condition can remember the past better than he can the present. The doctor was asked whether a degeneration of the brain goes along with cardiac insufficiency and arteriosclerosis. His answer was, "It could do it." The doctor was then asked, "Did it do it in this case?" The doctor's answer was, "Do I have to answer?" The court sustained the doctor's objection to being required to answer that question. Dr. Pittman was never asked whether he had seen or treated Aaron at any time during the winter or spring of 1945, or whether he knew anything about Aaron's mental condition at the time the deeds involved in this case were executed.

In G. M. & N. R. Co. v. Willis, 171 Miss. 732, 739, 157 So. 899, 158 So. 551, the Court said:

"The rule has been long established in this jurisdiction that a judgment will not be reversed for error unless it be shown by the record that the error was actually prejudicial and harmful to the rights of the complaining party. Mississippi Utilities Co. v. Smith, 166 Miss. 105, 117, 145 So. 896; Goins v. State, 155 Miss. 662, 667, 124 So. 785. Consonant with that rule, when a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have

the answers made of record, or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case, and whether its exclusion was actually harmful and prejudicial to the offerer. Bradley v. Howell, 161 Miss. 346, 354, 133 So. 660, 134 So. 843.''

In discussing the application of the rule thus stated to a case involving the exclusion of the evidence of a physician, the Court in the G. M. & N. R. Company case quoted with approval the following statement from the opinion rendered in United States Fidelity & Guaranty Company v. Hood, 124 Miss. 548, 571, 87 So. 115, 119, 15 A. L. R. 605: ''The evidence of a physician ought not to be received before the court, and it is error for the court to proceed upon the idea that the judge and the public may hear the statement of the physician in such case, though it be excluded from the jury.'' And, after quoting the above statement from the earlier case, the Court in the G. M. & N. R. Company case said: ''In these cases, if the knowledge sought to be placed in the record was acquired during the existence of the relationship which makes the information privileged, then the inquiry is not permitted to proceed further than to develop the actual existence of the privileged relationship.''

██ ■ In this case, as in Lum v. Lasch, 93 Miss. 81, 46 So. 559, and Lang et al. v. Jones, supra, the crucial point to be decided was whether the grantor in the deeds had mental capacity to understand the nature and effect of the transactions at the times the deeds were executed. If the appellant in this case wished to preserve his right to have the ruling of the lower court sustaining Dr. Pittman's claim of privilege reviewed by this Court on appeal, it was incumbent upon the appellant to have the record show at least that the relation of physician and

patient actually existed at or about the time the deeds were executed and that the doctor had actual knowledge of patient's condition at that time, so that the court might see from the record whether the ruling complained of was actually harmful or prejudicial to the appellant. ■■■ But it is not shown here that Dr. Pittman had seen or treated Aaron as a patient at any time during the early part of 1945 or that he had any actual knowledge of Aaron's mental condition at the time the deeds were executed; and it does not appear from the record that Dr. Pittman's evidence would have been of material help or controlling relevancy in determining the question as to Aaron's mental competency at the time the deeds were executed. For that reason we think that it cannot be said that the court's ruling on Dr. Pittman's claim of privilege, whether erroneous or not, constitutes ground for reversal of the decree of the lower court. United States Fidelity & Guaranty Company v. Hood, 124 Miss. 548, 87 So. 115, 119, 15 A. L. R., 605; Bradley v. Howell, 161 Miss. 346, 354, 133 So. 660, 134 So. 843; G. M. & N. R. Co. v. Willis, 171 Miss. 732, 157 So. 899, 158 So. 551; Boggan v. Scruggs, 200 Miss. 747, 29 So. 2d 86; Ross v. Biggs, 206 Miss. 542, 40 So. 2d 293; In Re Reineche's Estate, 225 Miss. 376, 83 So. 2d 438; Manning v. Hammond, 234 Miss. 299, 106 So. 2d 51.

■■ ■ Finally, it is argued that the court erred in refusing to admit as evidence in this case a copy of the testimony of Dr. Pittman taken during the year 1952 in the trial of the case of Lewis et al. v. Hunt et al., Cause No. 2803, in the Chancery Court of Walthall County, which was appealed to this Court and affirmed in 1954. See Hunt et al. v. Lewis et al., 219 Miss. 812, 70 So. 2d 13. But we think there is no merit in that contention. That case involved the cancellation of a mineral deed executed by Aaron Lewis, Sr., to G. D. Hunt and E. R. Whitaker on March 6, 1942. Dr. Pittman testified in that case that he had no records of exact dates, but he

knew that he had treated Aaron over a period of six or seven years prior to his death. Sometimes he would see him once a month, and sometimes six months would go by without his seeing him. He saw him two or three times in 1942, and his physical and mental condition were poor, but the doctor would not say that his condition was so poor that he did not have lucid intervals. No effort was made during the examination of the witness in that case to develop the facts concerning Aaron's physical and mental condition at the date of the execution of the deeds involved in this case; and there was no error in the action of the trial judge in refusing to admit as evidence in this case the copy of the transcript of Dr. Pittman's testimony in that case.

We find no reversible error in the record, and the decree of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.