LEE, Justice,
for the Court:
James A. Minor and Bobbie H. Minor (Minors), husband and wife, filed suit in the Chancery Court of the Second Judicial District of Jasper County against Annie F. Thigpen (Thigpen) and Willie James Pay-ton, Jimmy Lee Payton and Eugene Payton (Paytons), seeking to remove clouds on title to forty-six (46) acres of land. Thigpen and the Paytons filed separate answers and cross-bills, Thigpen seeking to cancel deeds executed by her to the Minors and Paytons as clouds on her title, and the Paytons seeking to cancel claims of the other parties as clouds on their title. The chancellor cancelled the deed executed by Thigpen to the Minors and confirmed the deed executed by Thigpen to the Paytons. Thigpen has appealed from the final decree confirming title in the Paytons. There is no appeal by the Minors.
I.
Did the trial court commit manifest error in declining to set aside the deed from appellant Thigpen to appellees Paytons?
The chancellor cancelled the deed from appellant to the Minors, executed January 11, 1974, on the ground that there was a confidential relationship between them, and the instrument had been obtained from appellant through overreaching and undue influence.
The deed to the Minors had never been recorded. Willie James Payton, Jimmy Lee Payton and Eugene Payton were brothers who resided and grew up near appellant as children and young men, then moved out of the State of Mississippi. Their parents continued to live next door to appellant. On August 3, 1978, their father, Luther Payton, contacted them by telephone and advised that appellant had contacted him, told him that she wanted to sell her land to appellees and asked him to get in touch with them. On August 4, 1978, they came to Jasper County, Mississippi, consulted with an attorney, who examined the title to the property, prepared a deed for appellant to sign conveying the property to the Paytons, and obtained a check payable to appellant in the sum of ninety-six hundred dollars ($9,600), consideration for the conveyance. About 3:00 p. m., the Paytons returned to the attorney’s office and together with the attorney and a notary public, went to appellant’s home, where they remained for approximately twenty (20) minutes. The attorney and the Paytons talked with appellant about the transaction, and she signed the deed which was notarized by the notary *631 public. The certified check was delivered to her in payment of the consideration. The Paytons then left appellant’s home and went to Bay Springs, where the deed was filed for record.
Appellant contends that the deed was void because the consideration was grossly inadequate, that she suffered from extreme weakness of mind, and that the burden of proof of her competency shifted to the ap-pellees. Without detailing the evidence offered by appellant, she introduced seven (7) witnesses, including Dr. William H. C. Dudley, a psychiatrist. The first witness was Leola T. Flowers, the only child and heir-at-law of appellant, who qualified as appel-lánt’s conservator prior to institution of the suit. Testimony of the lay witnesses covered a period of many years and was to the effect that appellant was crazy, had no mind, and didn’t know what she was doing.
Dr. Dudley testified concerning results of his examination of Mrs. Thigpen on April 10,1979, and April 30,1979, in his office. It was his opinion that she was not competent to understand the nature of the land conveyance to the Paytons on August 4, 1978, that she had arteriosclerosis, which worsened each year, and that she had organic brain syndrome, associated with senile brain disease, resulting in a loss of sense of value and confusion of people with one another. However, he admitted on cross-examination that he had accepted as true the history of appellant related to him by her daughter, Leola T. Flowers, that he did not perform a physical examination on appellant, that his judgment as to the extent of her senility was questionable and that he did not ascertain from Leola T. Flowers whether appellant was on medication at the time of his examination.
The appellees each testified, as did the notary public, that on August 4, 1978, the date appellant executed the deed, she was fully competent and knew and understood what she was doing. The Paytons further testified that the transaction originated with appellant and that they paid her the price she asked for the land, two hundred dollars ($200.00) per acre. An appraiser for the appellant stated, in his opinion, the fair market value of the property was seventeen thousand dollars ($17,000).
The question here is different from that presented between appellant and the Minors. There, appellant’s answer and cross-bill charged a confidential relationship and the chancellor found that such a relationship existed between appellant and the Minors and that the Minors overreached appellant and obtained their deed in 1974 by undue influence.
There is no allegation of confidential relationship between appellant and the Pay-tons. The burden of proof rested upon appellant throughout the trial to prove she was incompetent to execute the deed of conveyance. The appellant admits that the question is whether, at the time of the deed, she had insufficient mental capacity to understand in a reasonable manner the nature of her actions and fully understand the consequences thereof. In Lang v. Jones, 224 Miss. 649, 80 So.2d 783 (1955), the Court said:
“On the issue of mental capacity, the testimony was in conflict as to the entire period from the death of (grantor’s wife) in 1949 until the date of the execution of the second deed (1952). The appellee had the advantage of being able to offer proof of the mental capacity of the grant- or at the very times the deeds were executed, and this proof was to the effect that the grantor was mentally capable of understanding the nature and effect of the transactions. In this kind of case, the test is whether the grantor had mental capacity to understand the nature and effect of the transaction at the time the instrument was executed, and testimony relating to that particular time is entitled to the most weight. [Citations omitted].” (Emphasis added). 224 Miss. at 652, 80 So.2d at 784.
Lambert v. Powell, 199 Miss. 397, 24 So.2d 773 (1946), stated that “The mental capacity of one executing an instrument to pass title to land is to be tested as of the date of its execution.... ” [199 Miss. at 404, 24 So.2d at 775].
*632 In Pipes v. Webb, 236 Miss. 612, 111 So.2d 641 (1959), Pipes, a 69-year-old woman, conveyed her home and several rental homes for the sum of ten dollars ($10.00) to an individual other than a relative. Heirs of Pipes sought to cancel the deed, contending that Pipes was incompetent at the time of the instrument’s execution, and that the consideration was inadequate. Holding that the grantor Pipes was of sound mind and understood her actions at the time the deed was executed, the Court said:
“In Burnett v. Smith, 93 Miss. 566, 47 So. 117, 118, this Court said: ‘A man of sound mind may execute a will or a deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice.’ [Citations omitted].
. . . The trial court having found on adequate proof that [grantor] was of sound mind at the time of the execution of the instrument, and that she executed the same voluntarily and of her own free will . . ., the Court may not inquire into the wisdom or folly of her act.” 236 Miss. at 618, 111 So. at 643.
We are of the opinion that the appellant failed to meet the burden of proof imposed upon her to show that she was not competent to execute and deliver the August 4, 1978 deed of conveyance, and that the chancellor was not manifestly wrong in cancel-ling appellant’s claim as a cloud upon the title of appellees.
II.
Were comments in cross-examination by counsel for appellees contrary to accepted notions of fairness and did they create an atmosphere prejudicial to appellant?
The case was tried before the chancellor, sitting without a jury. Comments and remarks that might be prejudicial to a party, when tried before a jury, usually are not so when tried before a judge. He rules on, and may keep out or strike, such comments and remarks. However, the trial judge must maintain control of his court and the lawyers who interrogate witnesses, and he must insure that no witness is harassed or intimidated by an attorney. In Craft v. State, 271 So.2d 735 (Miss.1973), this Court said:
“Trial courts should employ every means at their command to prevent the browbeating and unnecessary public humiliation of witnesses, most of whom would certainly prefer to be elsewhere and who have been brought to the stand by the compulsory process of the court. It is a tragic commentary on conditions of the present day that fear on the part of potential witnesses of being thus mistreated is one of the major difficulties confronting law enforcement authorities in the successful prosecution and conviction of criminals. The irony of the situation is, perhaps, that the lawyer who thus abuses his position defeats his own purpose, as the reaction of judges and juries alike to the mistreatment of a helpless witness by an attorney is one of revulsion and distaste.” 271 So.2d at 737.
Although the cross-examination and comments of appellees’ attorney may have exceeded the bounds of propriety, they did not constitute reversible error.
III. — IV.
The appellant contends that the court erred in permitting appellees’ lay witnesses to testify as to the sanity of Annie F. Thigpen, and in overruling appellant’s motion for a protective order. We have carefully considered these assignments of error and are of the opinion that they are without merit.
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.